Case Number 26-6018

---

UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT

---

In the Matter of ROBERT KEITH MONROE
Debtor

---

ROBERT KEITH MONROE

Debtor-Appellant

v.

JB'S PROPERTIES AND INVESTMENTS, LLC,
JEFFERY NICHOLS AND EMILY NICHOLS

Appellees

---

Appeal from the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division
Hon Kathy A. Surratt-States, United States Bankruptcy Judge
Bankr. No. 24-42413-659
Chapter 13

---

# APPELLANT'S BRIEF

---

Andrew Magdy
Summers Compton Wells LLC
903 S. Lindbergh Blvd #200
St. Louis, MO 63131
Telephone: (314) 991-4999

## STATEMENT REGARDING ORAL ARGUMENT

Debtor-Appellant requests the opportunity to present oral argument in this case. Fed. R. App. P. 34(a)(2) provides three exceptions to allowing oral arguments. None are relevant in this case. This appeal is not frivolous, the issue has not been authoritatively decided by this Court, and Debtor-Appellant believes that the decisional process will be aided by oral arguments. Debtor-Appellant requests that he be granted twenty (20) minutes to argue his case before this Court.

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS .................................................................................. ii

TABLE OF AUTHORITIES ............................................................................ iv

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..............................1

STATEMENT OF THE CASE...........................................................................2

SUMMARY OF ARGUMENT...........................................................................7

STANDARD OF REVIEW ..............................................................................11

ARGUMENT ..................................................................................................12

**I. Section 456.950 Required the Bankruptcy Court to Determine Whether the Monroe Trust Qualified as a Qualified Spousal Trust Before Applying Pre-QST Common Law Severance Principles. ........................................................12**

**II. The Bankruptcy Court Could Not Deny Relief Under 11 U.S.C. § 522(f) Based Solely on a Non-Willful Defect of Form...............................................................................21**

**III. The Bankruptcy Court Erred in Applying the Rooker-Feldman Doctrine because Monroe sought Independent Federal Bankruptcy Relief Rather Than Review of a State Court Judgment......................................................................26**

**IV. Reversal Rather Than Remand is the Appropriate Remedy. .......34**

CERTIFICATE OF COMPLIANCE ...............................................................36

CERTIFICATE OF INTERESTED PARTIES.......................................................37

CERTIFICATE OF RELATED CASES ..................................................................38

## TABLE OF AUTHORITIES

**Cases**

*Bakewell v. Breitenstein*, 396 S.W.3d 406, 412-13 (Mo. Ct. App. 2013) ................15
*Brown v. Mt. Prospect State Bank (In re Muncrief)*, 900 F.2d 1220, 1224-25 (8th Cir. 1990) ....................................................................................................34
*Butner v. United States*, 440 U.S. 48, 55 (1979)......................................................14
*Caldwell v. DeWoskin*, 831 F.3d 1005, 1009 (8th Cir. 2016)................ 27, 28, 30, 33
*Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020)............................................34
*Clark Oil & Refining Corp. v. Ashcroft*, 639 S.W.2d 594, 596-97 (Mo. banc 1982) ................................................................................................. 14, 16
*Cosby v. Treasurer of State*, 579 S.W.3d 202, 207 (Mo. banc 2019).......................18
*Edwards v. City of Jonesboro*, 645 F.3d 1014, 1019 (8th Cir. 2011);......................11
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)... 27, 28, 30, 33
*Fabick & Co. v. Schaffner*, 492 S.W.2d 737, 745 (Mo. 1973).......................... 17, 18
*First Nat'l Bank v. Shirla Howard Revocable Living Trust*, 561 S.W.3d 434, 438 n.4 (Mo. Ct. App. 2018) ...................................................................16
*In re Belew*, 588 B.R. 875, 878 (B.A.P. 8th Cir. 2018)............................................14
*In re Binns*, 328 B.R. 126, 127 (B.A.P. 8th Cir. 2005) ............................................11
*In re Brewer*, 544 B.R. 177, 182-84 (Bankr. W.D. Mo. 2015) ..................... 9, 23, 24
*In re Canal St. Ltd. P'ship.*, 269 B.R. 375, 382 (B.A.P. 8th Cir. 2001) ...................25
*In re Care & Treatment of Murphy*, 477 S.W.3d 77, 82-83 (Mo. Ct. App. 2015)...19
*In re Clifton E. Morton Revocable Trust Dated Sep. 12, 2003*, 308 S.W.3d 287, 292-93 (Mo. Ct. App. 2010) .........................................................................20
*In re Dmitruk*, 517 B.R. 921, 923 (B.A.P. 8th Cir. 2014) ........................................11
*In re Graven*, 936 F.2d 378, 384-85 (8th Cir. 1991) ...............................................11
*In re Johnson*, 509 B.R. 213, 214-15 (B.A.P. 8th Cir. 2014)...................................11
*In re Mus*, 598 B.R. 623, 633 (Banrk. D. Minn. 2019)...........................................30
*In re Quade*, 482 B.R. 217, 233-35 (Bankr. N.D. Ill. 2012)....................................32
*In re Sasson*, 424 F. 3d 864, 871 (9th Cir. 2005) .....................................................29
*In re Schuette*, 58 B.R. 417, 420-21 (Bankr. D. Minn. 1986)..................................26
*In re Seaver*, 540 F.3d 805, 809 (8th Cir. 2008) ......................................................11

*In re Sinclair*, 563 B.R. 554, 559 (Banrk. N.D. Tex. 2017)....................................29
*In re Swizzlestick, L.L.C.*, 253 B.R. 264, 268-69 (Bankr. W.D. Mo. 2000)............25
*In re Watkins*, 298 B.R. 342, 350 (Bankr. N.D. Ill. 2003) .......................................32
*In re West*, 507 B.R. 252, 259-60 (Bankr. N.D. Ill. 2014) .......................................30
*Jerseyville Mall, LLC v. Shop 'N Save Warehouse Foods, Inc.*, 633 S.W.3d 523, 527 (Mo. Ct. App. 2021) ....................................................................................17
*Kvalog v. Park Christian School, Inc.*, 66 F.4th 1147, 1151-52 (8th Cir. 2023) .....11
*Moore v. Moore*, 111 S.W.3d 530, 533-34 (Mo. Ct. App. 2003) .............................16
*Nelson v. Hotchkiss*, 601 S.W.2d 14, 20 (Mo. banc 1980).......................................15
*Peters v. Peters*, 323 S.W.3d 49, 53 (Mo. Ct. App. 2010) .......................................19
*State ex rel. Aquila, Inc. v. Public Service Comm'n.*, 326 S.W.3d 20, 24-25 (Mo. Ct. App. 2010) .........................................................................................................16
*State ex rel. Schmitt v. Crane*, 641 S.W.3d 357, 367 (Mo. Ct. App. 2021).............13
*State v. Knox*, 604 S.W.3d 316, 322-23 (Mo. banc 2020).........................................16
*Sutter & Gillham PLLC v. Henry*, 146 F.4th 699, 703 (8th Cir. 2025)............. 28, 33
*Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381-82 (Mo. banc 2014). ..14

**Statutes**

28 U.S.C. § 1334..........................................................................................................1
28 U.S.C. § 151 ............................................................................................................1
28 U.S.C. § 157 ............................................................................................................1
28 U.S.C. § 157(b)(2)(A) ..............................................................................................1
28 U.S.C. § 157(b)(2)(B) ..............................................................................................1
28 U.S.C. § 158(a)(1)....................................................................................................1
28 U.S.C. § 158(b) ........................................................................................................1
28 U.S.C. §157(b)(2)(K) ........................................................................................1, 29
Fed. R. Bankr. P. 8002(a) ..............................................................................................1
Fed. R. Bankr. P. 9029(b) ........................................................................................ passim
RSMo § 456.950 ....................................................................................................... passim
RSMo § 456.950.1(2)(a) ..............................................................................................19
RSMo § 456.950.1(2)..................................................................................... 13, 15, 19
RSMo § 456.950.3(1)............................................................................................ 12, 13
RSMo § 513.475.2 ........................................................................................................5

**Other Authorities**

Michael E. Magliari, *The Legislative Evolution of the Qualified Spousal Trust*, 81 J. Mo. B. 62 (2025)....................17

## JURISDICTIONAL STATEMENT

The Debtor appeals from the Order of the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division ("Bankruptcy Court"), entered on May 19, 2026. The Bankruptcy Court had subject matter jurisdiction over the underlying bankruptcy case pursuant to 28 U.S.C. §§ 151, 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (K). The Bankruptcy Court's Order denied the Debtor's notices and motions to avoid judicial liens. The Bankruptcy Court's Order was a "final judgment, order, and decree" pursuant to 28 U.S.C. § 158(a)(1). The Debtor timely filed their Notice of Appeal to the Bankruptcy Appeal Panel on June 03, 2026. *See* Fed. R. Bankr. P. 8002(a). The Bankruptcy Appeal Panel has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**I.**

Whether the Bankruptcy Court erred by failing to determine whether the Monroe Trust qualified as a Qualified Spousal Trust under RSMo § 456.950 before applying preexisting common law severance principles.

**II.**

Whether the Bankruptcy Court improperly denied relief under 11 U.S.C. § 522(f) based upon a non-willful defect in the form of Monroe's Motions, contrary to Federal Rule of Bankruptcy Procedure 9029(b).

**III.**

Whether the Bankruptcy Court Erred in Applying the Rooker-Feldman Doctrine because Monroe sought Independent Federal Bankruptcy Relief Rather Than Review of a State Court Judgment.

## STATEMENT OF THE CASE

This appeal arises from the Bankruptcy Court's determination that the real property located at 4824 Mattis Road, St. Louis, Missouri 63128 (the "Mattis Road" property") lost tenancy by the entirety protection while held in the Monroe Trust. Debtor argued that the Monroe Trust qualified as Missouri Qualified Spousal Trust ("QST") under RSMo § 456.950, which expressly applies to trusts created before enactment of the statute and provides tenancy by the entirety protection to property held in a qualifying trust. Although the Bankruptcy Court acknowledged Debtor's reliance upon the QST statute, the Order contains no substantive analysis of § 456.950 and never expressly determines whether the Monroe Trust qualifies as a QST.

Instead, the Bankruptcy Court concluded that unilateral trust administration powers relating to the Mattis Road property severed tenancy by the entirety protection and applied pre-QST common law severance principles to deny relief (Doc. 46, p. 14). The Court further denied relief based upon Debtor's failure to comply with the prescribed local lien-avoidance form (Doc. 46, pp. 12-13) and application of the Rooker-Feldman doctrine (Doc. 46, pp. 14-15).

The Robert K. Monroe and Gina K. Monroe Joint Revocable Trust (the "Monroe Trust") was executed on December 30, 2008 (Doc. 18-2, pp. 1, 19-20). Robert K. Monroe and Gina K. Monroe, who were married at the time of the Trust's creation, served as both Grantors and Trustees of the Monroe Trust (Doc. 18-2, p.1). The Monroe Trust was established as a joint revocable trust for the benefit of both Grantors during their joint lifetimes and thereafter for the benefit of the surviving Grantor and their descendants (Doc. 18-2, pp. 1-3). The Trust provided that during the joint lifetime of the Grantors, the Trust could be revoked jointly by the Grantors, and that both Grantors retained rights to distributions from the Trust estate (Doc. 18-2, pp. 2-3, 16-17). The Mattis Road property was subsequently held within the Monroe Trust and became the subject of the underlying execution and bankruptcy proceedings (Doc. 35).

Missouri enacted its QST statute, RSMo § 456.950, effective August 28, 2011. The operative version of the statute applicable at the time of the bankruptcy filing defined a "qualified spousal trust" as a trust created by married settlors that permitted the trust property to be held and administered either in one trust or for the benefit of both settlors or in separate shares for the benefit of each settlor. The statute further expressly permitted revocable trust structures, discretionary distributions, and additional trust terms not inconsistent with the statute. The operative version of § 456.950 further provided that all property held in a qualified spousal trust "shall have

the same immunity from the claims of a separate creditor of either settlor as if such property were held outside the trust by the settlors as tenants by the entirety" and that such property "shall be treated for that purpose, including without limitation, federal and state bankruptcy laws, as tenants by entirety property." Finally, the operative statute expressly provided that it applied to trusts created before, on, or after August 28, 2011.

The underlying state court litigation began in 2016 when Robert Monroe initiated litigation concerning the Mattis Road property and filed a related notice of lis pendens against neighboring property. The litigation thereafter evolved into lengthy and contentious proceedings involving claims, asserted against Monroe individually, and later, in his capacity as Trustee of the Monroe Trust. During the course of that litigation, disputes arose concerning the ownership and proper representation of the Mattis Road property held within the Monroe Trust, including whether additional trustees or trust-related parties were required to be joined. Following entry of judgment against Robert Monroe in his individual capacity and as Trustee for the Monroe Trust, execution proceedings directed towards the Mattis Road property were initiated. Monroe opposed execution and argued that the Monroe Trust qualified as a Missouri Qualified Spousal Trust under RSMo § 456.950 and therefore retained tenancy by the entirety protection notwithstanding transfer of the property to the Monroe Trust (Doc. 18-6, Doc. 18-6). The state court

ultimately denied Monroe's petition to quash execution (Doc. 18-10), after which Monroe pursued writ proceedings prior to the filing of the bankruptcy case (Doc. 18-11; Doc. 18-12).

Monroe filed the underlying Chapter 13 bankruptcy case as an emergency petition on July 11, 2024. On July 25, 2024, Monroe filed his schedules and claimed any equity in the Mattis Road property as exempt pursuant to Missouri's tenancy by the entirety exemption under RSMo § 513.475.2 (Doc. 11, p. 1, Doc. 11 p. 13-15). No party filed an objection to Monroe's claimed exemption. On September 5, 2024, Monroe filed motions pursuant to 11 U.S.C. § 522(f) (Doc. 18, Doc. 19) seeking to avoid judicial liens asserted against the Mattis Road property on the grounds that such liens impaired exemptions to which Monroe would otherwise be entitled (the "Motions"). The Motions attached the Monroe Trust, the relevant state court pleadings, execution proceedings, and writ proceedings in support of Monroe's Qualified Spousal Trust theory. In support of those motions, Monroe argued that the Monroe Trust qualified as a Missouri Qualified Spousal Trust pursuant to RSMo § 456.950 and that property held within the Trust therefore retained tenancy by the entirety status for purposes of Missouri exemption law and federal bankruptcy proceedings (Doc. 18, Doc. 19) Monroe further alleged that the state court denied the Petition to Quash on grounds that the Trust permitted one Trustee to burden the property and that Monroe thereafter unsuccessfully sought writ relief from both the

Missouri Court of Appeals and the Missouri Supreme Court (Doc. 18, Doc. 19). Objections to the Motions to Avoid Liens were filed on October 4, 2024 (Doc. 22, Doc. 24). Following briefing and argument, and reassignment of the case on January 22, 2025, the Bankruptcy Court entered its Memorandum Opinion and Order on May 19, 2026 (Doc. 46).

Throughout the bankruptcy proceedings, Monroe's position was that the Monroe Trust qualified as a Missouri Qualified Spousal Trust pursuant to RSMo § 456.950 and that the Mattis Road property therefore retained tenancy by the entirety ownership status notwithstanding its transfer into the Trust. The Bankruptcy Court acknowledged Monroe's reliance on the QST statute but did not expressly determine whether the Monroe Trust qualified as a Qualified Spousal Trust under § 456.950 before concluding that the property lost tenancy by the entirety protection. Instead, the Bankruptcy Court concluded that the Mattis Road property did not retain tenancy by the entirety protection because the Monroe Trust permitted unilateral action by one Trustee with respect to the property and therefore applied pre-QST statute common law severance principles in denying Monroe's requested relief (Doc. 38, p. 14). The Bankruptcy Court further denied relief based upon Monroe's use of a non-standard motion format (Doc. 38, pp. 12-13) and application of the Rooker-Feldman doctrine (Doc. 38, pp. 14-15).

## SUMMARY OF ARGUMENT

The Bankruptcy Court erred by bypassing the governing statutory framework enacted by the Missouri Legislature through RSMo § 456.950 and instead resolving the tenancy by the entirety status of the Mattis Road property exclusively through pre-QST common law severance principles. Property interests and exemption rights within bankruptcy proceedings are determined under applicable state law. Missouri expressly enacted § 456.950 to govern whether property held in qualifying QSTs retain tenancy by the entirety treatment for purposes of creditor immunity and "federal and state bankruptcy laws." The operative statute further expressly applied to trusts created before August 28, 2011. Accordingly, whether the Monroe Trust qualified as a QST under § 456.950 was the threshold question before the Bankruptcy Court. Despite Monroe consistently arguing throughout the proceedings that the Monroe Trust qualified as a Missouri QST, the Bankruptcy Court's Opinion contains no analysis, substantive or otherwise, of § 456.950 and never expressly determined whether the Monroe Trust qualified under the governing statutory framework. Instead, the Bankruptcy Court bypassed the statutory framework entirely and applied pre-QST common law severance principles to conclude the Mattis Road property lost tenancy by the entirety protection Doc. 18-2, p. 14).

The omission was material because the operative version of § 456.950 expressly contemplated trust structures that depart from rigid traditional common



Appellate Case: 26-6018 Page: 14 Date Filed: 08/06/2026 Entry ID: 5669368

law entirety concepts. The statute expressly permitted revocable trusts, separate shares, discretionary distributions, flexible trustee administration powers, and additional trust terms not inconsistent with the statute, while simultaneously providing that qualifying trust property "shall be treated" as tenancy by the entirety property for purposes of creditor immunity and bankruptcy law. Additionally, the statute  did not require the settlors themselves to serve at trustees. Accordingly, the existence of trust administration powers differing from traditional common law entirety concepts could not, standing alone, resolve whether the Monroe Trust qualified for statutory QST treatment. By applying pre-QST severance principles without first determining whether the Monroe Trust satisfied the statutory framework enacted by the Missouri Legislature, the Bankruptcy Court effectively nullified the Legislature enactment of § 456.950.

The Monroe Trust satisfied the statutory requirements for Qualified Spousal Trust treatment under the operative version of § 456.950. Robert and Gina Monroe were married settlors who created a joint revocable trust for their mutual benefit during their joint lifetimes (Doc. 18-2, pp. 1-3, 19-20). The Trust provided for distributions of income and principal for the benefit of both settlors, preserved joint authority over revocation, amendment, modification, and withdrawal during the marriage, and incorporated trustee administration provisions expressly contemplated by the statute (Doc. 18-2, pp. 2-3, 13-18). Missouri law recognizes that trusts may

remain revocable notwithstanding requirements of joint action by married settlors, and nothing in § 456.950 requires unilateral revocation authority, prohibits co-trustee administration, or requires settlors to personally exercise all trustee functions. Nor does *In re Brewer*, 544 B.R. 177 (Bankr. W.D. Mo. 2015) compel a different result, as *Brewer* interpreted an earlier version of the statute and involved materially different trust provisions, including a unilateral partition right absent from the Monroe Trust. Because the Monroe Trust satisfied the statutory framework enacted by the Missouri Legislature, the Mattis Road Property was required by operation of § 456.950 to be treated as tenancy by the entirety property for purposes of federal bankruptcy law.

The Bankruptcy Court additionally erred in denying relief under 11 U.S.C. § 522(f) based solely upon a non-willful defect in the form of Monroe's Motions Doc. 18-2, pp. 12-13). Monroe's Motion expressly invoked § 522(f), identified the property, judicial liens, claimed exemption, and impairment theory, and attached the trust documents and related proceedings necessary to present the unique QST issues before the Bankruptcy Court. Any deviation from the prescribed local form therefore concerned presentation rather than substance. Federal Rule of Bankruptcy Procedure 9029(b) prohibited enforcement of the local form requirement in a manner that caused Monroe to lose his statutory right to seek lien avoidance. Because the parties

fully litigated the merits and any defect was harmless and readily curable, denial of relief constituted reversible error.

Finally, the Bankruptcy Court erred in applying the Rooker-Feldman doctrine to Monroe's exemption and lien avoidance claims (Doc. 18-2, pp. 14-15). Monroe did not seek review, reversal, or rejection of any state court judgment. He accepted the existence and validity of the state court proceedings and instead invoked exemption and lien avoidance rights arising independently under the Bankruptcy Code upon commencement of his bankruptcy case. Those rights could not have been litigated in the prior state court proceedings because they arise only within bankruptcy and depend upon the existence of a bankruptcy estate and a properly claimed bankruptcy exemption. Adjudicating Monroe's exemption rights and Motions therefore would not have required the Bankruptcy Court to determine that the state court was wrong. The state court judgment could remain entirely valid while the Bankruptcy Court determined the consequences of that judgment under federal bankruptcy law. Because Monroe sought independent federal bankruptcy relief rather than appellate review of a state court judgment, the Rooker-Feldman doctrine provided no basis for declining jurisdiction.

As the relevant trust provisions are contained in the record, the material facts are undisputed, and the issues presented are purely legal questions reviewed de novo,



Appellate Case: 26-6018 Page: 17 Date Filed: 08/06/2026 Entry ID: 5669368

the Court should reverse the Bankruptcy Court's legal conclusions and remand only for entry of orders consistent with this Court's opinion.

## STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed de novo, while findings of fact are reviewed for clear error. *In re Seaver*, 540 F.3d 805, 809 (8th Cir. 2008); *In re Johnson*, 509 B.R. 213, 214-15 (B.A.P. 8th Cir. 2014); *In re Dmitruk*, 517 B.R. 921, 923 (B.A.P. 8th Cir. 2014). Questions of statutory interpretation are likewise reviewed de novo. *In re Graven*, 936 F.2d 378, 384-85 (8th Cir. 1991).

Questions concerning the applicability of the Rooker-Feldman doctrine are likewise reviewed de novo. *Edwards v. City of Jonesboro*, 645 F.3d 1014, 1019 (8th Cir. 2011); *Kvalog v. Park Christian School, Inc.*, 66 F.4th 1147, 1151-52 (8th Cir. 2023); *In re Binns*, 328 B.R. 126, 127 (B.A.P. 8th Cir. 2005). To the extent the Bankruptcy Court's ruling required interpretation of the Monroe Trust, application of Missouri property law, or determination of the legal effect of those facts under the Bankruptcy Code, those issues likewise presented questions of law reviewed de novo.

## ARGUMENT

### I. Section 456.950 Required the Bankruptcy Court to Determine Whether the Monroe Trust Qualified as a Qualified Spousal Trust Before Applying Pre-QST Common Law Severance Principles.

This appeal turns on whether the Bankruptcy Court was required to determine whether the Monroe Trust qualified under Missouri's QST statute before resorting to pre-QST common law severance principles. Through the QST statute, the Missouri Legislature established a framework under which married couples may hold property in trusts containing features such as separate trust shares, discretionary distributions, and trustee administration while preserving tenancy by the entirety protections. The statute further provides that properly held in a QST "shall be treated," including for purposes of federal bankruptcy law, "as tenants by entirety property." § RSMo 456.950.3(1). Monroe consistently argued that the Monroe Trust satisfied those statutory requirements and that the Mattis Road Property therefore retained tenancy by the entirety status notwithstanding its transfer to the Trust. The Bankruptcy Court, however, never determined whether the Monroe Trust qualified under § 456.950. Instead, it proceeded directly to pre-QST common law severance principles (Doc. 38. p. 14). Because qualification under § 456.950 was the threshold inquiry, the Bankruptcy Court applied the wrong legal framework.



Appellate Case: 26-6018 Page: 19 Date Filed: 08/06/2026 Entry ID: 5669368

**A. The Threshold Statutory Inquiry Was Whether the Monroe Trust Qualified as a Missouri Qualified Spousal Trust.**

The threshold question before the Bankruptcy Court was whether the Monroe Trust qualified as a QST under § 456.950. That statute does not merely preserve preexisting common law entirety doctrine. It creates a statutory framework under which qualifying trusts may include revocable trust provisions, separate trust shares, discretionary distributions, trustee administration, and other trust terms not inconsistent with the statute. *See* § 456.950.1(2). The statute then supplies the legal consequences: property held in a qualifying QST "shall have the same immunity from the claims of a separate creditor of either settlor as if such property were held outside the trust by the settlors as tenants by the entirety" and "shall be treated for that purpose, including without limitation, federal and state bankruptcy laws, as tenants by entirety property." § 456.950.3(1).[1] Because the Bankruptcy Court never determined whether the Monroe Trust qualified under § 456.950 before applying pre-QST common law severance principles, it failed to apply the governing statutory framework.

Missouri courts recognize "[s]tatutes displace or supersede the common law to the extent of any inconsistency between them, not vice versa." *State ex rel. Schmitt v. Crane*, 641 S.W.3d 357, 367 (Mo. Ct. App. 2021). Where the legislature has

[1] *See* Michael E. Magliari, *The Legislative Evolution of the Qualified Spousal Trust*, 81 J. Mo. B. 62 (2025)

supplied a governing statutory framework, courts begin with the statutory text and seek to give effect to the legislature's intent as expressed therein. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381-82 (Mo. banc 2014). The question was not whether pre-QST common law once governed such transfers. The question was whether the Missouri Legislature had supplied a different governing framework through § 456.950.

That conclusion is reinforced by *Clark Oil & Refining Corp. v. Ashcroft*, 639 S.W.2d 594, 596-97 (Mo. banc 1982), where the Missouri Supreme Court explained that "[l]anguage from cases decided in the absence of statutory authorization will not be used . . . to defeat legislation enacted to cure that very deficiency of authority." Thus, whatever role pre-QST common law severance principles played before enactment of § 456.950 cannot be used to bypass the statutory framework the Legislature subsequently enacted to govern QSTs.

Property interests in bankruptcy proceedings are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Likewise, when a debtor claims a state-created exemption, the scope of that exemption is determined by applicable state law. *In re Belew*, 588 B.R. 875, 878 (B.A.P. 8th Cir. 2018). Accordingly, before denying Monroe's claimed exemption, the Bankruptcy Court was required to determine whether the Monroe Trust satisfied the statutory framework enacted by the Missouri Legislature.

**B. Section 456.950 Expressly Authorizes Trust Features Inconsistent with Traditional Common Law Entireties Principles While Directing that Qualifying Trust Property Be Treated as Tenancy by the Entirety Property.**

Section 456.950 does more than preserve traditional tenancy by the entirety ownership. It expressly authorizes trust structures that depart from traditional common law ownership concepts while preserving tenancy by the entirety status. Although traditional Missouri tenancy by the entirety doctrine rests on the common law concept of marital unity, under which each spouse owns the whole estate rather than a separate or divisible interest, *see Nelson v. Hotchkiss*, 601 S.W.2d 14, 20 (Mo. banc 1980)*; Bakewell v. Breitenstein*, 396 S.W.3d 406, 412-13 (Mo. Ct. App. 2013), the statute recognizes that qualifying trusts may employ different ownership and administrative mechanisms while preserving tenancy by the entirety protection.

Section 456.950 expressly permits trust property to be "held and administered in two separate shares of one trust for the benefit of each settlor." § 456.950.1(2). That authorization stands in direct contrast to traditional Missouri entirety doctrine, which holds that each spouse owns the whole estate rather than a separate or divisible share. *See Nelson*, 601 S.W.2d at 20*; Bakewell*, 396 S.W.3d at 412-13. The statute likewise permits revocable trust arrangements, discretionary distributions of income and principal, trustee administration and "other trust terms" not inconsistent with § 456.950. *See* § 456.950.1(2). By expressly authorizing such provisions while simultaneously granting tenancy by the entirety treatment to qualifying trust

property, the Legislature established that QST treatment could coexist with trust-administration concepts not identical to traditional common law entirety ownership.

Missouri trust law distinguishes between legal title held by trustees and equitable ownership held by beneficiaries. *See First Nat'l Bank v. Shirla Howard Revocable Living Trust*, 561 S.W.3d 434, 438 n.4 (Mo. Ct. App. 2018); *Moore v. Moore*, 111 S.W.3d 530, 533-34 (Mo. Ct. App. 2003). Accordingly, the existence of trustee discretion, co-trustees, successor trustees, or broad administrative authority cannot itself answer whether a trust qualifies under § 456.950. The statute expressly contemplates trustee discretion and trustee administration. To hold that such powers defeat QST treatment would render the Legislature's express authorization meaningless.

Missouri courts do not interpret statutes in a manner that renders express statutory authorizations meaningless. Courts may not construe one provision so as to nullify another, nor may they rely upon pre-statutory judicial doctrines to defeat authority subsequently granted by the Legislature. *See State v. Knox*, 604 S.W.3d 316, 322-23 (Mo. banc 2020); *State ex rel. Aquila, Inc. v. Public Service Comm'n.*, 326 S.W.3d 20, 24-25 (Mo. Ct. App. 2010)*; Clark Oil*, 639 S.W.2d, 596-97. If the trust features expressly authorized by § 456.950 such as separate shares, revocability, trustee discretion, and other trust terms, are treated as reasons to deny QST

treatment, the statutory provisions authorizing those features become meaningless. Missouri law does not permit such a construction.

The Legislature directed that qualifying trust property "shall be treated" as tenancy by the entirety property. Missouri courts recognize that statutory language directing something to be treated as possessing a particular status may apply even where the underlying characteristics differ from the traditional form. *See Jerseyville Mall, LLC v. Shop 'N Save Warehouse Foods, Inc.*, 633 S.W.3d 523, 527 (Mo. Ct. App. 2021) (explaining that "deem" means to treat something as if it were really something else and denotes a legal fiction). In *Fabick & Co. v. Schaffner*, 492 S.W.2d 737, 745 (Mo. 1973) the Missouri Supreme Court rejected the argument that statutory deeming language merely created a rebuttable presumption and held that the Legislature had "determine[ed] in advance" the legal status to be applied. By expressly authorizing trust structures that depart from traditional entirety concepts while directing that qualifying trust property "shall be treated" as tenancy by the entirety property, the Legislature established the governing inquiry. The question was not whether the Monroe Trust perfectly mirrored common law entirety ownership. The question was whether the Trust satisfied the statutory requirements of § 456.950. To hold otherwise would reduce the Legislature's command that qualifying trust property "shall be treated" as tenancy by the entirety property to a

rebuttable presumption defeated whenever a trust contains features that § 456.950 expressly authorizes.

### C. Section 456.950 Expressly Authorizes Trust Features Inconsistent with Traditional Common Law Entireties Principles While Directing that Qualifying Trust Property Be Treated as Tenancy by the Entirety Property.

The Monroe Trust satisfied each of the statutory requirements for Qualified Spousal Trust treatment under the operative version of § 456.950. Missouri courts recognize that when the Legislature supplies a statutory definition or establishes specific qualification criteria, those legislative directives are binding on the courts. *See Cosby v. Treasurer of State*, 579 S.W.3d 202, 207 (Mo. banc 2019). Likewise, where the Legislature directs that qualifying persons or property shall be "deemed" or "treated as" possessing a particular legal status, courts apply that status once the statutory requirements are satisfied. *See Fabick*, 492 S.W.2d at 745.

The Monroe Trust satisfies the statutory definition of a Qualified Spousal Trust under the operative version of § 456.950. Section 456.950.1 requires that the settlors be "married to each other at the time of the creation of the trust." The Monroe Trust expressly identifies Robert Monroe and Gina Monroe as the joint Grantors and Settlors of the Trust and reflects that the Trust was executed by them as husband and wife on December 30, 2008. The operative statute further expressly applies to trusts created before August 28, 2011. Missouri courts recognize that an express legislative declaration of retroactive application overcomes the ordinary presumption of



Appellate Case: 26-6018 Page: 25 Date Filed: 08/06/2026 Entry ID: 5669368

prospective operation absent a constitutional prohibition. *In re Care & Treatment of Murphy*, 477 S.W.3d 77, 82-83 (Mo. Ct. App. 2015). Accordingly, the Monroe Trust's 2008 creation date does not remove it from the statute's scope.

The Monroe Trust was further "held and administered in one trust for the benefit of both settlors" during their joint lifetimes as contemplated by § 456.950.1(2)(a). Item One of the Monroe Trust provides that trust income shall be paid to, or applied for the benefit of, the Grantors during their lifetimes and further authorizes invasion of principal for either Grantor when necessary for maintenance, support, or medical care (Doc. 18-2, pp. 2-3). The Trust therefore provided both settlors continuing access to trust income and principal during their joint lifetimes, as contemplated by § 456.950.1(2)(a) (Doc. 18-2 pp. 2-3).

The Monroe Trust also expressly permits revocation, amendment, modification, and withdrawal rights consistent with § 456.950. Item Eleven provides that the Grantors, acting jointly, could revoke or amend the Trust during their joint lifetimes and withdraw trust property during their joint lifetimes (Doc. 18-2, pp. 16-17). Upon death of the first Grantor, the surviving Grantor retained the authority to revoke, amend, or withdraw trust property individually (Doc. 18-2, pp. 16-17). Missouri law recognizes that a trust may remain revocable notwithstanding requirements of joint action by married settlors. *See Peters v. Peters*, 323 S.W.3d 49, 53 (Mo. Ct. App. 2010); *In re Clifton E. Morton Revocable Trust Dated Sep. 12,*

*2003*, 308 S.W.3d 287, 292-93 (Mo. Ct. App. 2010). Nothing in § 456.950 requires unilateral revocation authority during marriage as a prerequisite for QST treatment. To the contrary, the requirement of joint action during the marriage is consistent with traditional concepts of marital unity.

The Monroe Trust also incorporates discretionary distribution provisions and broad administrative powers contemplated by § 456.950. The statute expressly authorizes distributions "whether mandatory or within the discretion of the Trustee," and Item One repeatedly authorizes discretionary distributions of income and principal for the benefit of either Grantor (Doc. 18-2, pp. 2-3). Item Seven further grants broad powers concerning investment, management, transfer, borrowing, and operation of trust assets (Doc. 18-2, pp. 9/15). Such provisions are consistent with § 456.950, which expressly permits "other terms that are not inconsistent with the provisions of this section."

The Monroe Trust's use of co-trustee likewise does not remove it from the statutory framework. Nothing in § 456.950 requires settlors themselves to serve as trustees or prohibits the delegation of administrative authority. To the contrary, the statute distinguishes between "settlors" and "trustee" and expressly contemplates discretionary authority exercised by trustees. Item Nine of the Trust expressly defines "Trustee" to include successor trustees and co-trustees and authorizes ministerial acts by either co-trustee individually (Doc. 18-2, pp. 15-16).

Nothing in *Brewer*, compels a different result. *Brewer* interpreted an earlier version of § 456.950 and held that a trust failed to qualify for QST treatment because it expressly permitted either spouse to partition the trust and withdraw one-half of the trust assets. *In re Brewer*, 544 B.R. at 182-84. The Monroe Trust contains no comparable partition provision. During the parties' joint lifetimes, revocation, amendment, modification, and withdrawal required joint action by both Grantors. *Brewer* therefore does not control the outcome here. To the contrary, the feature Judge Norton found dispositive in *Brewer*, the unilateral right to partition and withdraw one-half of the trust assets, is absent from the Monroe Trust.

Because the Monroe Trust satisfied the statutory requirements established by § 456.950, property held within the Trust "shall be treated," including for purposes of federal bankruptcy law, as tenancy by the entirety property. The Mattis Road Property therefore retained statutory tenancy by the entirety treatment notwithstanding its transfer to the Monroe Trust. Accordingly, because the Monroe Trust qualified under § 456.950, the Mattis Road Property retained statutory tenancy by the entirety treatment, and the Bankruptcy Court erred by applying pre-QST common law severance principles instead.

## II. The Bankruptcy Court Could Not Deny Relief Under 11 U.S.C. § 522(f) Based Solely on a Non-Willful Defect of Form.

The Bankruptcy Court denied Monroe's 11 U.S.C. § 522(f) motions because they were not presented on the prescribed local form (Doc. 38, pp. 12-13). That

ruling cannot be reconciled with Federal Rule of Bankruptcy Procedure 9029(b). Monroe's Motions expressly invoked § 522(f), identified the property, judicial liens, claimed exemption, and impairment theory, and supplied the trust documents necessary to present the unique Qualified Spousal Trust issue before the Bankruptcy Court. At most, Monroe departed from prescribed manner of presenting his claim. Rule 9029(b) prohibits the enforcement of a local requirement of form in a manner that causes a party to lose a substantive right because of a non-willful defect in presentation. Because Monroe's Motions adequately invoked § 522(f), any deviation concerned form rather substance, caused no prejudice, and could readily have been cured, the Bankruptcy Court could not deny relief on that basis.

**A. Monroe's Motion Adequately Presented His §522(f) Claim.**

Monroe's Motions plainly invoked § 522(f) and provided adequate notice of the relief sought. The Motions identified the Mattis Road property, the judicial liens Monroe sought to avoid, Monroe's claimed exemption under Missouri tenancy by the entirety law and alleged that the liens impaired exemptions to which Monroe was entitled. They further attached the Monroe Trust, the relevant state court pleadings, execution proceedings, and writ proceedings, fully disclosing the legal basis for relief that the Trust qualified as a Missouri QST under RSMo § 456.950. The parties then fully litigated those issues through extensive briefing and argument. Under

these circumstances, no genuine doubt existed concerning either the relief Monroe sought or the legal basis for that relief.

The Motions likewise sufficiently alleged impairment of Monroe's claimed exemption rights. Although they did not present the statutory impairment calculation in the format contemplated by the local form, they alleged the fact establishing impairment. Monroe claimed an exemption under Missouri's tenancy by the entirety statute and alleged that the Mattis Road Property retained tenancy by the entirety protection through the Monroe Trust. Because tenancy by the entirety property is exempt from the claims of a separate creditor of only one spouse, the Motions necessarily alleged that Respondents' judicial liens impaired an exemption to which Monroe would otherwise be entitled. The substance of the impairment allegation was therefore fully presented notwithstanding the departure from the prescribed form.

### B. Monroe's Departure from the Local Form Did Not Affect the Substance of His Claim.

The local rule contemplated use of the prescribed lien-avoidance form, and Monroe's Motions did not follow that form precisely. That departure, however, reflected the nature of the claim rather than any omission of its substance. Monroe's entitlement to relief turned on whether the Monroe Trust qualified as a Missouri Qualified Spousal Trust under RSMo § 456.950, an issue that required the Bankruptcy Court to examine the Trust itself, the underlying state court proceedings,

and the statutory framework governing Qualified Spousal Trusts. Accordingly, Monroe's Motions necessarily included trust documents, state court pleadings, execution proceedings, writ proceedings, and statutory analysis beyond that ordinarily associated with a routine lien-avoidance motion. Although Monroe presented that information is a format different from the prescribed local form, the Motions supplied all of the information necessary to identify the relief sought and the legal basis for that relief. The alleged defect therefore concerned the manner in which Monroe presented his claim, not the substance of the claim itself.

**C. Rule 9029(b) Prohibited Forfeiture of Monroe's 11 U.S.C. § 522(f) Rights.**

Federal Rule of Bankruptcy Procedure 9029(b) directly governs the consequences of Monroe's departure from the prescribed local form. The Rule provides that "[a] local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a non-willful failure to comply." Accordingly, while bankruptcy courts may adopt local procedural requirements, they may not enforce those requirements in a manner that causes forfeiture of substantive rights created by the Bankruptcy Code or Bankruptcy Rules.

Nothing in the record suggests that Monroe deliberately disregarded the local rule or attempted to evade its requirements. Instead, the modified format reflected Monroe's effort to present the atypical Qualified Spousal Trust issues upon which his 11 U.S.C. § 522(f) motion depended. At most, Monroe committed a non-willful

defect in presentation. Because Monroe adequately invoked § 522(f), presented the factual and legal basis for relief, and fully litigated that relief, Rule 9029(b) prohibited enforcement of the local form requirement in a manner that caused forfeiture of his statutory right to seek lien avoidance. *See In re Canal St. Ltd. P'ship.*, 269 B.R. 375, 382 (B.A.P. 8th Cir. 2001).

**D. Any Defect Was Harmless and Readily Curable.**

The record demonstrates that all parties understood the relief Monroe sought and fully litigated the merits of that relief. Objections were filed, briefing occurred, multiple hearings were conducted, and the Bankruptcy Court issued a detailed memorandum opinion addressing the substantive issues presented. No party claimed surprise, lack of notice, or inability to respond. Under these circumstances, any deviation from a local form requirement was, at most, a harmless procedural defect that could not justify denial of relief under § 522(f).

Bankruptcy courts have long recognized that where the affected parties received adequate notice and a full opportunity to litigate the merits, "form will not be elevated over substance." *In re Swizzlestick, L.L.C.*, 253 B.R. 264, 268-69 (Bankr. W.D. Mo. 2000). Consistent with that principle, courts have treated technical defects in the manner a debtor invokes § 522(f) relief as nonfatal where the parties had notice of the issue and fully litigated it. *See In re Schuette*, 58 B.R. 417, 420-21 (Bankr. D.

Minn. 1986) (treating debtor's defense as a motion for lien avoidance where the issue was tried by the parties and adequate notice existed).

Even if the Bankruptcy Court concluded that use of the prescribed form or additional information was required, the appropriate remedy was to require Monroe to cure the defect, not to deny relief outright. The Court could have directed Monroe to file the prescribed form, permitted amendment, or allowed supplementation. Rule 9029(b) did not permit the Bankruptcy Court to transform a readily curable procedural defect into forfeiture of Monroe's statutory right to seek relief under § 522(f).

## III. The Bankruptcy Court Erred in Applying the Rooker-Feldman Doctrine because Monroe sought Independent Federal Bankruptcy Relief Rather Than Review of a State Court Judgment.

The Bankruptcy Court concluded that Monroe's exemption and lien avoidance claims were barred by the Rooker-Feldman doctrine because granting relief would require review of prior state court proceedings concerning the Mattis Road Property (Doc. 38, pp. 14-15). That conclusion misapprehends both the scope of the doctrine and the nature of the relief Monroe sought. Monroe did not seek reversal, modification, or invalidation of any state court judgment. Rather, he invoked exemption and lien avoidance rights arising solely under the Bankruptcy Code upon commencement of his bankruptcy case. Federal courts have repeatedly recognized that such rights constitute independent federal bankruptcy remedies that may be

adjudicated notwithstanding prior state court collection, execution, foreclosure, or creditor-remedy proceedings. Because Monroe sought bankruptcy specific relief that neither existed nor could have been litigated in the state court proceedings, the Rooker-Feldman doctrine does not apply.

### A. Rooker-Feldman Does Not Bar Bankruptcy Courts From Adjudicating Independent Federal Bankruptcy Rights.

The Rooker-Feldman doctrine is a narrow jurisdictional rule that bars lower federal courts from exercising appellate review over final state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine applies only to "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

The doctrine does not prohibit federal courts from adjudicating independent claims merely because those claims related to property or issues previously involved in state court proceedings. Rather, the critical inquiry is whether the federal court is being asked to review and reject the state court judgment itself, or instead is being asked to adjudicate rights arising independently under federal law. *Id.* at 291-93; *Caldwell v. DeWoskin*, 831 F.3d 1005, 1009 (8th Cir. 2016). The Supreme Court has expressly held "if a federal plaintiff presents some independent claim, albeit one that

denies a legal conclusion that a state court has reached," federal jurisdiction exists notwithstanding the prior state court proceeding. *Exxon Mobil*, 544 U.S. at 293.

The Eighth Circuit has cautioned against an expansive allocation of the doctrine. In *Caldwell*, the bankruptcy court concluded that Rooker-Feldman deprived it of jurisdiction to consider whether the automatic stay applied to ongoing state court contempt proceedings because doing so would effectively contradict a state court's determination. The Eighth Circuit reversed, holding that the bankruptcy court had construed the doctrine too broadly. *Id.* at 1009. The Court explained that Rooker-Feldman does not apply when the bankruptcy court is asked to adjudicate an independent federal bankruptcy claim rather than review the state court judgment itself. *Id.*

The Eighth Circuit recently reaffirmed the narrow scope of the doctrine in *Sutter & Gillham PLLC v. Henry*, 146 F.4th 699, 703 (8th Cir. 2025), explaining that the "post-Saudi Basic anchor is the underlying state court decision and judgment itself" and that a federal plaintiff may pursue an independent claim even if it "denies a legal conclusion that a state court has reached." The relevant inquiry is whether the plaintiff asserts as the legal wrong an allegedly erroneous state court judgment and seeks its rejection, or instead seeks relief arising from an independent federal claim. *Id.* The court further emphasized that Rooker-Feldman leaves room for ordinary preclusion principles and does not bar federal jurisdiction merely because the federal

action arises from the same underlying facts or events previously addressed in state court. *Id.* at 704.

That principle carries particular force in bankruptcy proceedings. The Ninth Circuit has explained that application of the Rooker-Feldman doctrine in bankruptcy is limited by the separate jurisdictional statutes governing federal bankruptcy law and that the doctrine has "little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case. *In re Sasson*, 424 F. 3d 864, 871 (9th Cir. 2005) (quoting *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2002) (en banc)). Congress has expressly empowered bankruptcy courts to determine and enforce bankruptcy specific rights, including lien avoidance, avoidance actions, discharge determinations, and plan confirmation. *Id.* Accordingly, the existence of a prior state court judgment does not deprive a bankruptcy court of jurisdiction to determine the consequences of that judgment under federal bankruptcy law. As *Sasson* explained, a debtor who invokes bankruptcy relief is not necessarily seeking review of the state court judgment itself, but may be instead asking the bankruptcy court to determine the effect of that judgment within the federal bankruptcy system. *Id*. The same principle applies to exemptions and lien avoidance proceedings, both of which are core bankruptcy matters arising under the bankruptcy code. *See* 28 U.S.C. 157(b)(2)(B), (K); *In re Sinclair*, 563 B.R. 554, 559 (Bankr. N.D. Tex. 2017);

*In re Mus*, 598 B.R. 623, 633 (Bankr. D. Minn. 2019); *In re West*, 507 B.R. 252, 259-60 (Bankr. N.D. Ill. 2014). The dispositive question, therefore, is whether Monroe sought review of a state court judgment or instead invoked bankruptcy specific rights arising independently under the bankruptcy code.

### B. Monroe Did Not Seek Review, Reversal, or Rejection of Any State Court Judgment.

The Bankruptcy Court's application of the Rooker-Feldman doctrine rested on the premise that Monroe's exemption and lien avoidance claims constituted an impermissible challenge to prior state court proceedings concerning the Mattis Road Property. They did not. Monroe did not ask the Bankruptcy Court to reverse, vacate, modify, or declare invalid any state court judgment. Nor did he contend that the state court lacked jurisdiction, misapplied Missouri law, or otherwise reached an erroneous result. Instead, Monroe accepted the existence and validity of the state court proceeding and sought only to determine whether the Mattis Road property was exempt and whether Respondents' judicial liens impaired that exemption under 11 U.S.C. § 522. Those requests asked the Bankruptcy Court to determine the availability of bankruptcy-specific relief arising under the Bankruptcy Code, not to review or reject any state court judgment. *See Exxon Mobil*, 544 U.S. at 293; *Caldwell*, 831 F.3d at 1099.

That is precisely the type of claim recognized in *In re Mus*, 598 B.R. 623 (Bankr. D. Minn. 2019). There the debtor sought to avoid judicial liens arising from

state court judgments pursuant to § 522(f). The court held that Rooker-Feldman did not apply because the debtor was not challenging the validity of the state court judgments, but instead was invoking a bankruptcy specific remedy directed at the liens resulting from those judgments. *Id.* 628-29. As a core bankruptcy proceeding, lien avoidance required the bankruptcy court to determine the effect of federal bankruptcy law on the judgment liens, not to review or reject the underlying state court judgments. *Id.*

### C. Monroe's Exemption and Lien Avoidance Rights Arose Only Upon Commencement of the Bankruptcy Case.

Even if the state court proceedings and Monroe's bankruptcy case involved the same property, the rights asserted in the bankruptcy case were fundamentally different. Monroe's exemption claim and lien avoidance rights under 11 U.S.C. § 522(f) arose only upon the commencement of the bankruptcy case and therefore could not have been litigated in the prior state court proceedings.

Section 522(f) creates a uniquely federal bankruptcy remedy. It permits a debtor to avoid a judicial lien to the extent that the lien impairs an exemption to which the Debtor would otherwise be entitled. 11 U.S.C. § 522(f). That remedy is inseparable from the bankruptcy exemption scheme and depends upon the existence of both a bankruptcy estate and a properly claimed bankruptcy exemption. Accordingly, the right does not exist outside of bankruptcy and cannot be adjudicated before a bankruptcy petition is filed.

Courts have repeatedly recognized this distinction. In *In re Watkins*, 298 B.R. 342, 350 (Bankr. N.D. Ill. 2003) the court held that exemption and lien avoidance issues could be considered in bankruptcy because they arose under § 522 and "could not have been litigated until Watkins sought protection under the Code." Likewise, *In re Quade*, 482 B.R. 217, 233-35 (Bankr. N.D. Ill. 2012) held that a debtor's bankruptcy exemption and lien avoidance rights were not barred by prior state court proceedings because those issues "could not have been litigated until debtor sought bankruptcy protection."

The same principle governs here. Monroe's state court proceedings involved collection remedies available under Missouri law. By contrast, his exemption claim and § 522(f) motion asserted rights created exclusively by federal bankruptcy law. Because no bankruptcy case existed, the state court could not have determined Monroe's entitlement to bankruptcy exemptions or whether Respondents' judicial liens impaired those exemptions within the meaning of § 522(f). Those rights arose only upon the bankruptcy filing and therefore could not have been litigated in the prior state court proceedings.

Because Monroe's claims arose only after commencement of the bankruptcy case, they constituted independent federal bankruptcy rights that fell squarely within the Bankruptcy Court's core jurisdiction.

### D. Adjudicating Monroe's 522(f) Motion Did Not Require the Bankruptcy Court to Determine That the State Court Was Wrong.

The Bankruptcy Court's application of the Rooker-Feldman doctrine fails for a simple reason: the state court judgment could remain entirely valid while the Bankruptcy Court determined the effect of federal bankruptcy law on Monroe's exemption and lien avoidance rights. The doctrine applies only where the federal court must review and reject a state court judgment in order to grant the requested relief. *Exxon Mobil*, 544 U.S. at 284. Where the state court judgment may remain entirely valid while the federal court adjudicates independent federal rights, Rooker-Feldman does not apply. *Caldwell*, 831 F.3d at 1010-11.

The Eighth Circuit recently reaffirmed this distinction in *Sutter*, 146 F. 4th at 703-04, explaining that the relevant inquiry is whether the plaintiff seeks relief from the state court judgment itself or instead asserts an independent federal claim. Monroe's claim plainly falls into the latter category.

Monroe never challenged the validity of the underlying judgment, the state court's jurisdiction, or the procedures employed in the state court proceedings. Nor did Monroe seek to vacate, reverse, or modify any state court order. The only question presented by Monroe's exemption claim and § 522(f) motion was whether federal bankruptcy law entitled him to exempt the Mattis Road Property and avoid the resulting judicial lien to the extent it impaired that exemption. Resolution of those issues did not require the Bankruptcy Court to determine whether the state

court reached a correct or incorrect result. It required only a determination of the effect of federal bankruptcy law following commencement of the bankruptcy case.

Accordingly, Monroe's claims did not ask the Bankruptcy Court to function as an appellate tribunal reviewing state court decisions. They asked the Bankruptcy Court to perform a core bankruptcy function specifically assigned by Congress. Because the state court judgment could remain fully valid while the Bankruptcy Court adjudicated Monroe's exemption and lien avoidance rights, the Rooker-Feldman doctrine provided no basis for declining jurisdiction.

## IV. Reversal Rather Than Remand is the Appropriate Remedy.

Remand is unnecessary. The Eighth Circuit has recognized that where "the merits comprise a purely legal issue, reviewable de novo and susceptible of determination without additional factfinding, a remand ordinarily will serve no useful purpose." *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020). The Eighth Circuit has likewise recognized in the bankruptcy context that remand is unnecessary where the facts are undisputed, the evidence is documentary, and the record presents no genuine issue of material fact. *Brown v. Mt. Prospect State Bank (In re Muncrief)*, 900 F.2d 1220, 1224-25 (8th Cir. 1990).

That is the circumstance presented here. The operative trust provisions are contained in the record, the material facts concerning the Monroe Trust are undisputed, and the issue presented is purely legal. Whether the Trust satisfies the

requirements of RSMo § 456.950 is question of statutory interpretation applied to undisputed trust language. Likewise, whether the Monroe's Motions adequately invoked relief under 11 U.S.C. § 522(f), whether Rule 9029(b) permitted denial of relief based upon a non-willful defect form, and whether Rooker-Feldman doctrine applies are all legal questions subject to de novo review. None requires additional factual development.

Accordingly, reversal, rather than remand, is the appropriate remedy. The Court should hold that the Monroe Trust qualifies as a Qualified Spousal Trust under RSMo § 456.950 and that the Mattis Road Property retained tenancy by the entirety treatment for purposes of Missouri exemption law and federal bankruptcy proceedings. The Court should further hold that the Bankruptcy Court erred in denying Monroe's 11 U.S.C. § 5.22(f) motions based upon a non-willful defect of form and in applying the Rooker-Feldman doctrine. The case should be remanded solely for such further proceedings as may be necessary to implement those legal determinations.

Respectfully submitted,

SUMMERS COMPTON WELLS LLC

By: *<u>/s/ Andrew R. Magdy</u>*
Andrew R. Magdy, #60390
903 S. Lindbergh Blvd., #200
St. Louis, MO 63131
314-991-4999
amagdy@summerscomptonwells.com



Appellate Case: 26-6018 Page: 42 Date Filed: 08/06/2026 Entry ID: 5669368

## CERTIFICATE OF COMPLIANCE

I certify the foregoing Brief of Appellant complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i). This brief contains 7,820 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g). This brief further complies with the typeface and type-style requirements of the Federal Rule of Bankruptcy Procedure 8015(a)(5) and (6) because it has been prepared with 14-point Times New Roman, using Microsoft Word, Version 2606. This brief complies with Local Rule 80104A(b) of the Eight Circuit Bankruptcy Appellate Panel, containing a certification of interested parties and certification of related cases.

Respectfully submitted,

SUMMERS COMPTON WELLS LLC

By: *<u>/s/ Andrew R. Magdy</u>*
Andrew R. Magdy, #60390
903 S. Lindbergh Blvd., #200
St. Louis, MO 63131
314-991-4999
amagdy@summerscomptonwells.com



Appellate Case: 26-6018 Page: 43 Date Filed: 08/06/2026 Entry ID: 5669368

UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| ROBERT KEITH MOROE | ) | |
| Debtor-Appellant | ) | |
| | ) | Appeal No. 26-6018 |
| v. | ) | |
| | ) | |
| JB'S PROPERTIES AND | ) | |
| INVESTMENTS, LLC, AND | ) | On appeal from U.S. |
| JEFFERY NICHOLS AND EMILY | ) | Bankruptcy Court, Eastern |
| NICHOLS | ) | District of Missouri |
| Appellees | ) | Hon. Kathy A. Surratt-States |
| | ) | Case No. 24-42413-659 |

**CERTIFICATE OF INTERESTED PARTIES**

The undersigned certifies that, to the best of his knowledge, there are no other parties having an interest in the outcome of this appeal.

Respectfully submitted,

SUMMERS COMPTON WELLS LLC

By: */s/ Andrew R. Magdy*
Andrew R. Magdy, #60390
903 S. Lindbergh Blvd., #200
St. Louis, MO 63131
314-991-4999
amagdy@summerscomptonwells.com



Appellate Case: 26-6018 Page: 44 Date Filed: 08/06/2026 Entry ID: 5669368

UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| ROBERT KEITH MOROE<br>Debtor-Appellant<br><br>v.<br><br>JB'S PROPERTIES AND INVESTMENTS, LLC, AND JEFFERY NICHOLS AND EMILY NICHOLS<br>Appellees | ) | Appeal No. 26-6018<br><br>On appeal from U.S. Bankruptcy Court, Eastern District of Missouri<br>Hon. Kathy A. Surratt-States<br>Case No. 24-42413-659 |

**CERTIFICATE OF RELATED CASES**

The undersigned certifies that, to the best of his knowledge, the following cases involve substantially the same parties or legal issues:

Substantially the Same Parties: None

Substantially the Same Issues: None

Respectfully submitted,

SUMMERS COMPTON WELLS LLC

By: *<u>/s/ Andrew R. Magdy</u>*

Andrew R. Magdy, #60390
903 S. Lindbergh Blvd., #200
St. Louis, MO 63131
314-991-4999
amagdy@summerscomptonwells.com