**Appeal No. 26-6018**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**FOR THE EIGHTH CIRCUIT**

---

In the Matter of ROBERT KEITH MONROE, Debtor.

---

ROBERT KEITH MONROE,

Appellant,

v.

JB'S PROPERTIES AND INVESTMENTS, LLC, *et al*.,

Appellees.

---

Appeal from the United States Bankruptcy Court
for the Eastern District of Missouri, Eastern Division
Honorable Kathy A. Surratt-States, United States Bankruptcy Judge
Bankruptcy Case No. 24-42413-659

---

# PRINCIPAL BRIEF OF APPELLEE JB'S PROPERTIES AND INVESTMENTS, LLC

---

Robert E. Eggmann, MO #37374
Becky R. Eggmann, MO #37302
Carmody MacDonald P.C.
120 South Central Ave., Suite 1800
St. Louis, MO 63105
(314) 854-8600
ree@carmodymacdonald.com
bre@carmodymacdonald.com
COUNSEL FOR APPELLEE JB'S PROPERTIES AND INVESTMENTS, LLC

# TABLE OF CONTENTS

Page No.

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ........................................................... ii

STATEMENT OF THE CASE ........................................................... 1

SUMMARY OF THE ARGUMENT ........................................................... 6

ARGUMENT ........................................................... 8

I. Debtor Failed to Establish that the Mattis Road Property Was a Tenancy by Entirety Property Immune from the Claims of His Creditors, and as a Result, the Bankruptcy Court Was Entitled to Deny the Relief Requested in his Motion to Avoid Lien .................... 8

II. Debtor Failed to Comply with Local Bankruptcy Rules and Bankruptcy Statute Requirements When Filing His Motion to Avoid Lien, and as a Result the Bankruptcy Court Was Entitled to Deny the Relief Requested in his Motion .............................. 12

III. The Mattis Road Property Held in the Trust Was Not Entitled to an Exemption as Tenancy by Entirety Property, and the Bankruptcy Court Was Barred by the Rooker-Feldman Doctrine from Deciding Otherwise When Ruling on Debtor's Motion to Avoid Lien ........................................................... 17

CONCLUSION ........................................................... 28

CERTIFICATE OF ELECTRONIC SUBMISSION ........................................................... 29

CERTIFICATE OF COMPLIANCE ........................................................... 30

CERTIFICATION OF INTERESTED PARTIES ........................................................... 31

CERTIFICATION OF RELATED CASES ........................................................... 32

## TABLE OF AUTHORITIES

....**Page No.**

**Cases**

*Bank of America, N.A. v. Outboard Marine Corp.,*
*(In re Outboard Marine Corp.),* 300 B.R. 308 (Bankr. N.D. Ill. 2003) ...13, 16
*Caldwell v. DeWoskin*, 831 F.3d 1005 (8th Cir. 2016) .......................... 26, 27
*D.C. Court of Appeal v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303,
75 L.Ed.2d 206 (1983) ................................................ 18, 19, 22
*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) ..................... 19, 27
*Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 599 (8th Cir. 2000) ..... 19
*Gisslen v. City of Crystal, Minn.*, 345 F.3d 624 (8th Cir. 2003) ............. 18, 19, 22
*Green v. Mattingly*, 585 F.3d 97 (2nd Cir. 2009) ...................................... 20
*In re Bellingroehr*, 403 B.R. 818 (Bankr. W.D. Mo. 2009) ............................ 9
*In re Brewer*, 544 B.R. 177 (Bankr. W.D. Mo. 2015) ............................ 10, 11
*In re Burns*, 306 B.R. 274 (Bankr. E.D. Mo. 2004) .................................... 19
*In re Lepar*, 272 B.R. 758 (Bankr. M.D. Fla. 2001) ................................... 23
*In re Moche*, 679 B.R. 135 (Bankr. S.D.N.Y. 2026) .................................. 13
*In re Paula Saker & Co., Inc.*, 37 B.R. 802 (Bankr. S.D.N.Y. 1984) ................ 13
*In re Schweizer*, 2008 WL 5636386 (Bankr. M.D. Fla., Oct. 23, 2008) ............. 24
*In re Simply Essentials, LLC*, 78 F.4th 1006 (8th Cir. 2023) ............................ 8
*In re Speyside Holdings LLC*, 2026 WL 1436894
(Bankr. E.D. N.Y., May 21, 2026) ........................................ 25, 26
*In re Stanke*, 234 B.R. 439 (Bankr. W.D. Mo. 1999) ................................ 9, 10
*In re Zambre*, 306 B.R. 428 (Bankr. D. Mass. 2004) .................................. 24
*Kolich v. Antioch Laurel Veterinary Hospital, Inc, P.C. (In re Kolich)*,
273 B.R. 199 (B.A.P. 8th Cir. 2002) .................................... 13, 14, 15
*Lemonds v. St. Louis County*, 222 F.3d 488 (8th Cir. 2000) ........................... 18
*Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) ........... 18
*Schroeder v. Rouse (In re Redding)*, 265 B.R. 601
(B.A.P. 8th Cir. 2001) ................................................... 12, 13. 16
*Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357 (E.D.N.Y. 2001) ..................... 13
*Specialized Loan Servicing, LLC v. Devita*, 610 B.R. 513 (E.D. N.C. 2019) ....... 16



Appellate Case: 26-6018 Page: 3 Date Filed: 10/16/2026 Entry ID: 5695218

*Sutter & Gillham PLLC v. Henry*, 146 F.4th 699 (8th Cir. 2025) …..……….…... 26, 27
*T.M. v. Univ. of Maryland Med. Syst. Corp.*, 608 U.S. 668,
146 S.Ct. 1739, 225 L.Ed. 238 (2026) ……………………….……….... 19, 20
*United States v. Becker*, 2005 WL 6120994 (E.D. Mo., Sept. 25, 2005) ……….….. 9

**Statutes**

R.S.Mo. § 456.950 ……………………………………………….….…… 2, 4, 21
R.S.Mo. § 456.950(2) ……………………………………………………….……… 11
R.S.Mo. § 456.950(3)(1) ………………………………………….....…….…… 11
R.S.Mo. § 511.440(1) ……...………………………………………..………… 14
11 U.S.C. § 101(36) ………………………………………..…...……… 12, 14
11 U.S.C. § 522(f) ……….....…...………………… 4, 5, 8, 12, 14, 15, 16, 17, 20, 22, 23, 24
11 U.S.C. § 522(f)(1)(A) …………………………………………......…… 12, 20
11 U.S.C. § 522(f)(2)(A) ……………………………………..……...……… 12
11 U.S.C. § 541(a) …………………………………………………….....…… 5
28 U.S.C. § 1257 ………………………………………………………..…. 18, 19

**Court Rules**

Federal Rules of Bankruptcy Procedure, Rule 8014(b)(3) …………….……....….... 1
Federal Rules of Bankruptcy Procedure, Rule 9029 …………...………..…… 12, 13
Federal Rules of Bankruptcy Procedure, Rule 9029(a)(2) …………...………….... 12
Federal Rules of Bankruptcy Procedure, Rule 9029(b) …………...……………... 16
Local Rules of the Bankruptcy Court for the Eastern District
of Missouri, L.R. 1001(A) …...………………………………………… 13
Local Rules of the Bankruptcy Court for the Eastern District
of Missouri, L.R. 1001(B) ………..………...………………. 13, 14, 16, 17
Local Rules of the Bankruptcy Court for the Eastern District
of Missouri, L.R. 4003-2 ……………………………...…………... 14, 15, 16
Local Rules of the Bankruptcy Court for the Eastern District
of Missouri, L.R. 4003-2 (A)………………………………...……. 14, 16

## STATEMENT OF THE CASE[1]

This appeal filed by Robert Keith Monroe ("Debtor" or "Appellant") arises from an order of the United States Bankruptcy Court for the Eastern District of Missouri, the Honorable Kathy Surratt-States presiding (the "Bankruptcy Court"), entered on May 19, 2026 [Doc. 46], denying the Notice and Motion to Avoid Judicial Lien of JB's Properties and Investments, LLC [Doc. 18 and Exhibits 18-1–18-11] (the "Motion to Avoid Lien") and the Notice and Motion to Avoid Judicial Lien of Jeffrey and Emily Nichols.[2]

### State Court Procedural History

It is undisputed that JB's Properties and Investments, LLC ("JBPI" or "Appellee") holds a judicial lien on certain real property located at 4824 Mattis Road in St. Louis County, Missouri (the "Mattis Road Property"). The lien arises from a judgment entered on November 9, 2022[3] by the Circuit Court of St. Louis County, Missouri (the "State Court") in a contentious dispute between neighbors. The State Court ultimately found against Debtor individually and in his capacity as trustee of

---

[1] Appellee includes this Statement of the Case, pursuant to Federal Bankruptcy Rule 8014(b)(3).

[2] Jeffrey and Emily Nichols (the "Nichols") are filing their own separate brief in this appeal.

[3] The judgment was subsequently amended on February 22, 2023 [Doc. 18- 2] (as amended, the "Judgment").

the Robert K. Monroe and Gina K. Monroe Joint Revocable Living Trust u/t/a dated December 17, 2008 [*see* Doc. 18-1] (the "Trust") for slander of title and nuisance, resulting in a damages award in favor of JBPI in the principal amount of $124,103.07 plus interest. [Doc. 18-2 at p. 2.] According to Debtor, he and his non-filing spouse, Gina K. Monroe, were co-trustees, settlors, and beneficiaries of the Trust. [Doc. 18 at p. 2 ¶ 3.] The Mattis Road Property was owned by the Trust and was the residence of Debtor and his spouse. [Doc. 18 at p. 2 ¶¶ 4–5.]

When JBPI sought to levy upon the Mattis Road Property, Debtor petitioned the State Court to quash the execution [*see* Doc. 18-5], arguing that the Mattis Road Property was owned by the Trust which he alleged was a Missouri qualified spousal trust ("QST") pursuant to R.S.Mo. § 456.950 (the "QST Statute"). Debtor claimed in his Petition to Quash Execution that the Trust enjoyed "the same immunity from the claims of a separate creditor of either settlor as if such property were held outside the trust by settlors as tenants by the entirety." [Doc. 18-5 at p. 3 ¶ 8; Doc. 18-7 at p. 3 ¶ 9]. Debtor shared a copy of the Trust with the State Court in order to allow it the opportunity to review the language contained therein and make a determination as whether its assets qualified as exempt from execution as a tenancy by entireties properties. [*See* Doc. 18-7 at p. 3 ¶ 8.] Both parties filed successive briefs with the State Court in support of their positions. [*See* Doc. 18-6; Doc. 18-7; Doc. 18-8.]

The State Court rejected Debtor's argument that the Trust was a qualified spousal trust subject to tenancy by entirety treatment under Missouri law, ultimately determining that the Petition to Quash Execution must fail based upon the language of the Trust itself. In its order entered on April 11, 2024 [Doc. 18-9], the State Court determined that because the property in question was not owned in tenancy by entirety, JDPI's lien attached and the execution would be allowed to go forward. The State Court held that:

> [w]hile expertly argued by [Debtor's] counsel, the very language of [the] Trust renders [Debtor's] argument insufficient. Item 7 of the Trust (p. 8) specifically states that "any specific individual Trustee" shall have the full power and authority to do any and all things . . . including investment of the trust assets. It allows the individual trustee to rent, mortgage or transfer real property. An individual Trustee has "broad powers" (p. 13). This Trust language allows for one trustee to burden a property.
> [Debtor's] Petition to Quash Execution is hereby DENIED.

[Doc. 18-9, citing Doc. 18-1 at pp. 8-13 (Item 7).]

Debtor then filed writs of prohibition to the Missouri Court of Appeals and to the Missouri Supreme Court, both of which denied relief without opinion on June 3, 2024 and July 9, 2024, respectively. [Doc. 18-10; Doc. 18-11.]

**Bankruptcy Court Procedural History**

On July 11, 2024, Debtor commenced the instant bankruptcy case on an emergency basis, by filing a petition for relief under chapter 13 of title 11 of the

United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code" or "Code"), seeking, *inter alia*, to thwart JBPI's execution efforts. [*See* Appellant's Brief, p. 5.] Debtor scheduled the Mattis Road Property as tenancy by the entirety property while contending that it was in fact owned by the Trust. [Doc. 46 at p. 1.]

On September 5, 2024, Debtor filed his Motion to Avoid Lien pursuant to 11 U.S.C. § 522(f), seeking avoidance of the judicial lien against the Mattis Road Property held by JBPI. [Doc. 18]. Debtor raised the identical argument as argued before the State Court, namely that the Mattis Road Property was held in a qualified spousal trust under R.S.Mo. § 456.950 and thereby property of the bankruptcy estate entitled to enjoy "the same immunity from the claims of a separate creditor of either settlor as if such property were held outside the trust by settlors as tenants by the entirety." [Doc. 18 at p. 4 ¶ 18]. He further argued that JDPI's lien should be avoided to the extent that it impaired his claimed tenancy by entireties exemption. [Doc. 18 p. 4 ¶ 2.] JBPI's objection to the motion [Doc. 24] was filed on October 4, 2024. Following oral argument, additional briefing on legal issues was requested and submitted to the Bankruptcy Court. [Doc. 33; Doc. 38; Doc. 39].

The case was reassigned on January 22, 2025, and on May 19, 2026 the Bankruptcy Court entered its Order denying Debtor's Motion to Avoid Lien. [Doc. 46] (the "Order"). The Bankruptcy Court made several key findings of fact and conclusions of law in its Order.

First, the Bankruptcy Court determined that Debtor and his non-filing spouse held legal interests in the Trust as trustees and equitable interests as beneficiaries. [Doc. 46 at pp. 7–8.]

Next, the Court found that the legal and equitable joint spousal interests in the Mattis Road Property, rendered it property of the bankruptcy estate within the meaning of section 541(a) of the Bankruptcy Code. [Doc. 46 at p. 11.]

Further, the Bankruptcy Court concluded that the Judgment in favor of JDPI created a judicial lien on the Mattis Road Property as defined under both state and federal law. [Doc. 46 at p. 12.] The Court pointed out that, in theory, had Debtor complied with the local rules and statutory provision governing lien avoidance, he might have been permitted to avoid the same judicial lien to the extent that it impaired his exemption (notwithstanding the jurisdictional issues he faced). However, Debtor's failure to submit completed filings detailing the extent to which the judicial lien impaired his claimed exemption, as is required under section 522(f) of the Code and local rule, thwarted his ability to succeed. [Doc. 46 at p. 13.]

Moreover, the Court found that Debtor was precluded from claiming a valid tenancy by entirety exemption in assets held by the Trust, such as the Mattis Road Property, because the trust language itself gave each trustee the authority to act independently in a manner which severed the tenancy by entirety interest.

Accordingly, the Mattis Road Property was not protected as tenancy by entirety property. [Doc. 46 at pp. 13–14.]

Finally, the Court held that the Rooker-Feldman doctrine, established as precedent by the Eighth Circuit, applied in this case to deprive the Bankruptcy Court of jurisdiction to reverse findings of the State Court, which by its Judgment rejected Debtor's allegations that the Trust was a qualified spousal trust under Missouri law and entitled to tenancy by entirety treatment. In its Order, the Bankruptcy Court addressed this issue, stating:

> In light of Debtor's repeated actions to litigate the issue before the State Court along with the State Court's repeated rulings in favor of JBPI, LLC the Court determines that Debtor is in fact prohibited by the Rooker-Feldman doctrine from challenging the ruling of the State Court in regard to an alleged tenancy by the entirety interest in the Mattis Road Property, as a previously decided issue of state law.

[Doc. 46 at p. 15]. Debtor's Motion to Avoid Lien was thus denied.

On June 1, 2026, Debtor timely filed the instant appeal to the Eighth Circuit Bankruptcy Appellate Panel ("BAP") from the Bankruptcy Court's Order. [Doc. 48].

## SUMMARY OF THE ARGUMENT

This appeal turns upon legal issues that were effectively disposed of in three separate Missouri state courts prior to the commencement of Debtor's chapter 13 bankruptcy case. Debtor's argument in his brief that "the threshold question before the Bankruptcy Court was whether the Trust qualified as a QST" under state law is



Appellate Case: 26-6018 Page: 10 Date Filed: 10/16/2026 Entry ID: 5695218

misplaced. [Appellant's Brief, p. 13.] The essential initial inquiry by this Court should be whether the Rooker-Feldman doctrine will apply to prevent Debtor's attack upon the state courts' successive findings that the Trust did not create a tenancy by entirety interest in the Mattis Road Property under Missouri law.

Under Missouri law, a tenancy by entirety interest may be severed by agreement, actual or implied, or by conduct. Once severed, the cited protections from creditors no longer exist. The State Court examined the Trust language and determined that the right reserved to each spouse to unilaterally burden or encumber the assets of the Trust, including the Mattis Road Property, was inconsistent with the nature of a tenancy by entirety property. The Bankruptcy Court concluded that Debtor's lien avoidance motion sought an impermissible "re-do" of the State Court's legal conclusions, and for that reason the Rooker-Feldman doctrine would deny subject matter jurisdiction over the claim. For this reason, the Bankruptcy Court's Order denying the relief requested in the Motion to Avoid Lien should be affirmed.

If the BAP should decline to extend Rooker-Feldman doctrine to the case before it, it should nonetheless find the Bankruptcy Court's Order denying the lien avoidance motion to be well-founded. The Trust, while encompassing some features of tenancy by entirety property, does not contain all of them. The most glaring absence is a restriction against one spouse's unilateral conveyance or burden upon the Trust assets. Allowing individual trustees the "full power and authority to do

any and all things . . . as if the absolute owner thereof" runs counter to the creation of a tenancy by entirety interest and beyond the scope of what is contemplated in the QST Statute. Moreover, there is no case law to support the 2015 amendment to the QST Statute which purports to deem spousal trusts to be tenancy by entirety properties for purposes of federal bankruptcy law.

Finally, Debtor's failure to comply with the statutory restrictions set forth in section 522(f) of the Bankruptcy Code, and the procedural guidelines for the same prescribed by local rule, was fatal to his lien avoidance motion. The Bankruptcy Court was within its rights to deny the motion for this reason.

## ARGUMENT

### I. Debtor Failed to Establish that the Mattis Road Property Was a Tenancy by Entirety Property Immune from the Claims of His Creditors, and as a Result, the Bankruptcy Court Was Entitled to Deny the Relief Requested in his Motion to Avoid Lien.

As noted by the Bankruptcy Court in its Order, state law determines the nature and extent of a debtor's interest in property, while federal law governs whether such interest is property of the bankruptcy estate. [Doc. 46 at p. 10.] *See In re Simply Essentials, LLC*, 78 F.4th 1006, 1009 (8th Cir. 2023). In this case, the Bankruptcy Court found that Debtor's status as both trustee and beneficiary of the Trust "afforded Debtor both a legal and equitable interest in the Mattis Road Property" held concurrently with his non-filing spouse. [Doc. 46 at p. 11.] These spousal



Appellate Case: 26-6018 Page: 12 Date Filed: 10/16/2026 Entry ID: 5695218

interests were sufficient to include the Mattis Road Property as property of the bankruptcy estate. The question remained for the Court to determine whether the couple's transfer of the Mattis Road Property to the Trust allowed Debtor and his wife to maintain their tenancy by entirety interest in the same.

Tenancy by entirety is a form of marital property ownership "based upon the ancient common law principle that, upon marriage, each spouse loses his or individual identity, and the two people become one entity." *In re Bellingroehr*, 403 B.R. 818, 820 (Bankr. W.D. Mo. 2009). Tenancy by the entirety property is protected in that it may not be seized to satisfy the debts of just one spouse. *In re Stanke*, 234 B.R. 439, 442 (Bankr. W.D. Mo. 1999). The "primary characteristic of tenancy by the entireties property is that neither spouse may revoke, terminate, or burden the property unilaterally." *Bellingroehr*, 403 B.R. at 820 (citing *United States v. Becker*, 2005 WL 6120994 at *10 (E.D. Mo., Sept. 25, 2005)). While the interest is protected, it "may be severed during the lifetime of the parties by agreement, actual or implied, or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interest as belonging to them in common." *Stanke*, 234 B.R. at 442.

Here, the Bankruptcy Court closely examined the language of the Trust and found that it explicitly allowed for "any specific individual Trustee" to have the "full power and authority *to do any and all things*, including investing trust assets."

(emphasis added) [*see* Doc. 46 at p. 14; Doc. 18-1 at p. 8 ¶ 7.] Moreover, the Trust documents allowed either individual trustee to "rent, mortgage, . . . [or] transfer [. . . real property]." [Doc. 46 at p. 14; Doc. 18-1 at p. 9 ¶ 7(B)(2).] As such, the Trust gave each spouse acting alone the express ability to sever the entirety interest. The Court therefore concluded, just as the State Court had done before it, that the claimed entireties interest was severed by the language of the Trust itself, and Debtor was not entitled to claim a tenancy by entirety interest in the Mattis Road Property.

The facts in the instant case mirror those considered by the Bankruptcy Court for the Western District of Missouri in *In re Stanke*, 234 B.R. 439 (Bankr. W.D. Mo. 1999). In *Stanke*, Debtor and his non-filing spouse conveyed real property formerly titled as tenancy by entirety property to two self-titled trusts, seeking favorable tax consequences. The trusts allowed Debtor and his spouse to act on behalf of the trust unilaterally, authorizing the independent right to sell, encumber, lease, abandon, or dispose of any trust assets. The court concluded that the trust language evidenced an agreement to treat the trust property as tenants in common, thus severing their entirety interests. *Id*. at 446.

Likewise in the *Brewer* case, a husband and wife transferred their home into a spousal trust which allowed either of them to unilaterally partition trust property, "enabling such grantor to restrict, transfer, or withdraw one-half of the assets in [the] trust." *In re Brewer*, 544 B.R. 177, 182–83 (Bankr. W.D. Mo. 2015). The

Bankruptcy Court for the Western District of Missouri concluded that while the trust preserved some features of a tenancy by entireties property, such as survivorship, the right to partition severed the marital tenancy ownership. *Id.* at p. 183. The decision acknowledged recent amendments to the Missouri QST Statute but found them inapplicable as they became effective after the petition date, which is the cut-off for evaluating bankruptcy exemptions. *Id.* at p. 183–84. The court further declined to express an opinion as to the ultimate effect of these statutory changes. *Id.* at n. 7.

Debtor argues that the QST Statute through its 2015 amendment extends tenancy by entirety protection to property held by a QST for purposes of "federal and state bankruptcy laws." R.S.Mo. § 456.950(3)(1). No cases, including *Brewer*, have interpreted this amendment and its effect. But JDPI would question the ability of the Missouri legislature to presume to instruct a bankruptcy court as to the nature of property of the bankruptcy estate. Moreover, while the statute provides that a QST may contain additional terms "not inconsistent with the provisions of this section" (*see* § 456.950(2)), the unilateral power of Debtor or his spouse "to do any and all things" with trust assets [*see* Doc. 18-1 at p. 8 ¶ 7] appears overly broad and inconsistent with the purpose behind the creation of a tenancy by entirety asset.

As a result of Debtor's failure to establish that the Mattis Road Property was tenancy by entirety property immune from creditors' claims, the

Bankruptcy Court did not err in denying his Motion to Avoid Lien.

## II. Debtor Failed to Comply with Local Bankruptcy Rules and Bankruptcy Statute Requirements When Filing His Motion to Avoid Lien, and as a Result the Bankruptcy Court Was Entitled to Deny the Relief Requested in his Motion.

The Bankruptcy Code permits a debtor to avoid the fixing of a judicial lien placed on real property in certain circumstances where "such lien impairs an exemption to which the debtor would have been entitled" under the Code. 11 U.S.C. § 522(f)(1)(A). The subject lien impairs an exemption:

> to the extent that the sum of— (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A). A judicial lien is defined under the Bankruptcy Code as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

Procedures implementing section 522(f) are guided by local rule in this district. Rule 9029 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and each, a "Rule") authorizes "bankruptcy judges to make and amend local bankruptcy rules." FED. R. BANKR. P. 9029(a)(2). The implementation and enforcement of local rules of practice and procedure are entirely permissible under the Bankruptcy Rules. *Schroeder v. Rouse (In re Redding)*, 265 B.R. 601, 603

(B.A.P. 8th Cir. 2001) (noting that "[a] bankruptcy court must have the authority not only to require compliance with the rules, but must also be accorded the discretion to issue sanctions where appropriate, and decline to do so if the circumstances warrant."); *In re Moche*, 679 B.R. 135, 140–41 (Bankr. S.D.N.Y. 2026) (citing *In re Paula Saker & Co., Inc.*, 37 B.R. 802, 809 (Bankr. S.D.N.Y. 1984)) (acknowledging that local rules "have the force of law to the extent they do not conflict with higher authority.") (quoting *Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 372 (E.D.N.Y. 2001)). Local rules are binding on the . . . court as well as the parties." *Bank of America, N.A. v. Outboard Marine Corp. (In re Outboard Marine Corp.),* 300 B.R. 308, 313 (Bankr. N.D. Ill. 2003).

Pursuant to Rule 9029, the Bankruptcy Court adopted the Local Rules of the Bankruptcy Court for the Eastern District of Missouri (the "Local Rules" and each, a "L.R."). L.R. 1001(A). The Local Rules "apply to all case and proceedings in the United States Bankruptcy Court for the Eastern District of Missouri." L.R. 1001(B). Moreover, the Local Rules caution that "[f]ailure to comply with these Rules may result in denial of relief requested, dismissal, or other sanctions." *Id.*

The decision of this Bankruptcy Appellate Panel in *Kolich v. Antioch Laurel Veterinary Hospital, Inc, P.C. (In re Kolich)*, 273 B.R. 199 (B.A.P. 8th Cir. 2002) is the seminal authority in the Eighth Circuit governing judicial lien avoidance motions and sets up the framework for evaluating the calculation of the extent of an

impairment of a debtor's exemption. In the wake of *Kolich* and as informed by section 522(f) of the Code, the Bankruptcy Court promulgated Local Rule 4003-2, which requires all motions to avoid a judicial lien to contain a specific description of both the property subject to the lien avoidance action and the documents giving rise to the lien. L.R. 4003-2(A). In addition, the Local Rule requires that "[a]ll motions to avoid judicial liens on real property should be filed using the Local Form 'Motion to Avoid Judicial Lien' found on the Court's web site." *Id*. The referenced Local Form ("L.F.") 56[4] provides a framework for the calculation of the extent of an exemption's impairment. Pursuant to Local Rule 4003-2, use of Form 56 is mandated by the Bankruptcy Court, and a debtor's failure to comply jeopardizes his ability to obtain the relief he has requested. [*See* L.R. 4003-2(A); L.R. 1001(B).]

In it Order, the Bankruptcy Court acknowledged that JDPI's lien on the Mattis Road Property was a judicial lien within the meaning of both section 101(36) of the Code and R.S.Mo. § 511.440(1), which defines such a lien on real property under Missouri law. Nonetheless, the Court was constrained not to permit Debtor to avoid JDPI's lien due to his failure to comply with Local Bankruptcy Rules and Form 56 mandating the necessary information required to secure a §522(f) lien avoidance in the Bankruptcy Court for the Eastern District of Missouri. [Doc. 46 at pp. 12–13.] A

---

[4] A true copy of the Local Rules cited and Local Form 56 have been provided to the Court in the Appendix filed contemporaneously with this Appellee's Brief. [Appx. A2–A9.]

close comparison of the Motion to Avoid Lien and Local Form 56 reveals that in his motion Debtor failed to provide the monetary amount of JDPI's judicial lien. [L.F. 56 ¶ 9.] Moreover, he failed to include a calculation of the alleged impaired exemption in accordance with the applicable formula set forth in *Kolich*, which would allow the Bankruptcy Court to evaluate and determine the extent of impairment and corresponding lien avoidance. [L.F. 56 ¶¶ 10–11.] The Bankruptcy Court found these deviations from Local Form 56 to be fatal to Debtor's motion. [Doc. 46 at p. 13.]

Debtor objects to the Bankruptcy Court's Order, alleging that he complied with section 522(f) in substance, and thus the Bankruptcy Court erred in denying his avoidance motion. [Appellant's Brief, pp. 22–23.] Section 522(f) of the Code required a demonstration of the extent that the sum of the liens on the Mattis Road Property and Debtor's claimed exemption exceeded the value of his interest in the property in the absence of any liens. As set forth above, and as a plain reading of the Motion to Avoid Lien reveals, this information is clearly missing from Debtor's motion. [Doc. 18.]

Next, Debtor objects to the Bankruptcy Court's denial of his lien avoidance motion arguing that his departure from the prescribed Local Form 56 did not affect the substance of his claim. [Appellant's Brief, pp. 23–24.] While JDPI would nevertheless deny that Debtor has complied in substance with Local Rule 4003-2,

departure from the form provided is grounds for the Bankruptcy Court to deny his lien avoidance motion, as a bankruptcy court has the authority to promulgate and rely upon compliance with its procedural local rules. *Redding*, 265 B.R. at 603. *See also* L.R. 4003-2(A); L.R. 1001(B); and *Outboard Marine Corp.*, 300 B.R. at 313 (while recognizing that a movant had complied with the local rule governing summary judgment motions "in substance, but has deviated from the specific procedural directives" set forth in the local rule, the court struck a cross-motion for summary judgment.)

Debtor further argues that Rule 9029(b) prohibited enforcement of local procedural rule requirements set forth in Local Rule 4003-2. [Appellant's Brief, pp. 24–25.] The form requirement set forth in Local Rule 4003-2 and Form 56 does not disregard the substantive rights of section 522(f) of the Bankruptcy Code— rather, it comports with the language and intent of the statutory provision and sets forth a procedural mechanism to obtain lien avoidance. *See Specialized Loan Servicing, LLC v. Devita*, 610 B.R. 513, 523 (E.D. N.C. 2019) (upholding the application of local bankruptcy rule setting procedures to determine the amount necessary to cure a mortgage debt as procedural, even if some substantive rights were affected, and finding that such rule conformed with the purpose and text of the federal rule).

Finally, Debtor argues that the appropriate relief would have been to have required him to cure the defect in his lien avoidance motion, as opposed to denying

it outright. While it is true that the Bankruptcy Court was not required to deny relief to Debtor, the Court was entitled to do so. Litigants are forewarned that such consequences may occur in Local Rule 1001(B). Having failed to plead and establish all of the elements of a section 522(f) claim as required by Local Rule and Form, the Bankruptcy Court did not err in denying Debtor's Motion to Avoid Lien.

## III. The Mattis Road Property Held in the Trust Was Not Entitled to an Exemption as Tenancy by Entirety Property, and the Bankruptcy Court Was Barred by the Rooker-Feldman Doctrine from Deciding Otherwise When Ruling on Debtor's Motion to Avoid Lien.

After several years of contentious litigation, Debtor ultimately found himself to be the "state court loser" after Missouri courts repeatedly recognized that the Trust document by its own language did not create a tenancy by the entirety interest in Debtor's property which would shield it from JDPI's execution efforts. In anticipation of JDPI's levy upon the Mattis Road Property and seeking immediate relief to avoid the loss of his home, Debtor filed an emergency chapter 13 bankruptcy case. He then used the vehicle of his bankruptcy proceeding to attempt to avoid JDPI's lien, once again raising the argument rejected by the State Court that the Mattis Road Property's tenancy by the entirety status shielded it from creditors.

Debtor's lien avoidance motion asked the Bankruptcy Court to do what the Missouri appellate courts would not do— effectively set aside the State Court's Order of April 11, 2024 denying the Petition to Quash Execution by finding that

under Missouri law the Mattis Road Property was tenancy by entireties property safeguarded from execution. The so-called Rooker-Feldman doctrine, established by the Supreme Court in *D.C. Court of Appeal v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and their progeny, curbs such abuses by unsuccessful state court litigants by prohibiting the re-litigation by federal courts of claims previously rejected by state courts.

The Rooker-Feldman doctrine holds that, with the exception of habeas corpus petitions, "lower federal courts do not have subject matter jurisdiction to review an order issued by the state courts." *Gisslen v. City of Crystal, Minn.*, 345 F.3d 624, 627 (8th Cir. 2003) (citing *Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000)). In *Rooker*, the Supreme Court held that a federal court lacked jurisdiction to resolve a challenge to the judgment of a state court which had been affirmed by that state's supreme court as "a proceeding to reverse or modify [a] judgment for errors of that character" would be "an exercise of appellate jurisdiction." *Rooker*, 263 U.S. at 415–16. "If the [state court] decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." *Id.* at 415. In *Feldman*, the Court concluded that the federal district court lacked jurisdiction to review a final judgment of the D.C. highest court because such "[r]eview . . . can be obtained only in this Court" under 28 U.S.C.



Appellate Case: 26-6018 Page: 22 Date Filed: 10/16/2026 Entry ID: 5695218

§1257. *Feldman*, 460 U.S. at 476. Thus, only the Supreme Court has subject matter jurisdiction to review state court judgments. *Id.* at 462. The Eighth Circuit has determined that the Rooker-Feldman doctrine, where applicable, can divest a bankruptcy court of jurisdiction to review state court decisions. *In re Burns*, 306 B.R. 274, 277 (Bankr. E.D. Mo. 2004) (citing *Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 599, 560 (8th Cir. 2000) (*per curiam*)). Because extension of the doctrine deprives a lower federal court of jurisdiction over a claim, "its application is not discretionary and the court must invoke the doctrine *sua sponte*." *Burns*, 306 B.R. at 277 (citing *Gisslen*, 345 F.3d at 627)).

As a general rule, the Rooker-Feldman doctrine will deprive federal courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments." *T.M. v. Univ. of Maryland Med. Syst. Corp.*, 608 U.S. 668, 672, 146 S.Ct. 1739, 225 L.Ed. 238 (2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 281, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). The doctrine will apply to cases satisfying the following four requisites:

(1) The federal-court plaintiff lost in state court;
(2) The plaintiff must complain of injuries caused by a state court judgment;
(3) The plaintiff must invite [federal] court review and rejection of that judgment; and

(4) The state-court judgment must have been rendered before the [federal] court proceedings commenced.

*Green v. Mattingly*, 585 F.3d 97, 101 (2nd Cir. 2009). The Supreme Court in *T.M. v. University of Maryland Medical System Corporation* recently concluded that Rooker-Feldman will apply when a state-court judgment remains subject to further state appellate review. *T.M. v. Univ. of Maryland Med. Sys. Corp.*, 608 U.S. at 688.

The State Court determined in its Order of April 11, 2024 denying the Petition to Quash Execution that despite Debtor's repeated efforts to establish that the Trust was a QST exempt from execution under Missouri law, he failed to do so based upon the language of the Trust itself. He then argued to the Bankruptcy Court that his exemption existed and entitled him to avoid JDPI's judicial lien on the "exempt" Trust property. Under section 522(f) of the Bankruptcy Code, a debtor attempting to avoid the fixing of a judicial lien on an interest in property must demonstrate that the "lien impairs an exemption to which the debtor would have been entitled . . . ." 11 U.S.C. § 522(f)(1)(A). Ruling in favor of Debtor on the Motion to Avoid Lien would require the Bankruptcy Court to challenge the Missouri court's ruling with respect to that tenancy by the entirety exemption rejected by the State Court. Application of the Rooker-Feldman doctrine will prevent the overturn of this finding and a review of the four elements of the doctrine confirms this result.

The first requirement is that the federal-plaintiff lost in state court. Clearly, the Order of April 11, 2024 established that the "the very language of the Trust renders [Debtor's] argument insufficient" [Doc. 18-9], depriving the Trust of protected status under Missouri law and thus entitling JDPI to execute on the Mattis Road Property. Subsequent review by the Missouri appellate courts was rejected. [Doc. 18-9; Doc. 18-10; Doc. 18-11.]

As to the second element, the plaintiff must complain of injuries resulting from the state court's decision. Here, Debtor is indeed complaining of injuries caused by the Order of April 11, 2024 entered by the State Court, as his arguments to the Bankruptcy Court in the Motion to Avoid Lien mirror those failed arguments raised in his Petition to Quash Execution as grounds for finding that the Trust property was indeed exempt. In both instances he alleged that the Trust "qualifies as a Missouri Qualified Spousal Trust pursuant to R.S.Mo. § 456.950" enjoying "the same immunity from the claims of a separate creditor of either settlor as if such property were held outside the trust by the settlors as tenants by the entirety." [Doc. 18-5 at p. 3 ¶ 8; Doc. 18 at p. 3–4 ¶¶ 14 and 18.] The status of the Trust assets as exempt tenancy by entireties property was an argument that Debtor lost despite repeated efforts before the state courts.

The third requirement of Rooker-Feldman is that the federal-plaintiff invited federal review and rejection of the state court decision. This requirement is met for

the reasons set forth above, as Debtor made the same argument under Missouri law to the Bankruptcy Court that was considered and rejected by the State Court.

The fourth and final requirement is that the state court judgment be entered prior to commencement of the federal suit. Here, the Order of April 11, 2024 and unsuccessful writs to the Missouri appellate courts all took place prior to Debtor's emergency chapter 13 filing on July 11, 2024. [Doc. 18-9, Doc. 18-10; Doc. 18-11.] Accordingly, the Rooker-Feldman doctrine will apply to divest the Bankruptcy Court of subject matter jurisdiction over this state law issue.

In his brief, Debtor argues that the Bankruptcy Court's extension of the Rooker-Feldman doctrine was inappropriate because Debtor "did not seek reversal, modification, or invalidation of any state court judgment" but rather a bankruptcy-specific relief under section 522(f). [Appellant's Brief, p. 30.] While it may be true that Debtor did not expressly call for a nullification of the State Court's holding based upon the application of section 522(f), it is not necessary for the state and federal claims to be identical in order for the Rooker-Feldman doctrine to apply. The doctrine "extends beyond straightforward appeals . . . [to] more indirect attempts by federal plaintiffs to undermine state court decisions." *Gisslen*, 345 F.3d at 627 (internal quotations omitted). Federal court jurisdiction is precluded over federal claims that are "inextricably intertwined" with claims of the state court action. *Id*. (citing *Feldman*, 460 U.S. at 463, n. 16).

In the instant case, the State Court's ruling that— the Trust did not qualify as a QST and its assets were thereby not entitled to an exemption under Missouri law as tenancy by entireties properties— is inextricably intertwined with a request for the Bankruptcy Court to determine that a tenancy by entirety exemption exists and is impaired and thus subject to avoidance. To prevail before the Bankruptcy Court on the Motion to Avoid Lien would entail a ruling that the Mattis Road Property was indeed shielded as tenancy by entirety property, despite the State Court having reviewed the Trust language and determined that it was not. While the ultimate relief requested before the federal and state courts differs (one seeking to avoid JDPI's lien on the Mattis Road Property and the other seeking to quash an execution on the property), the threshold issue argued by Debtor was the same in both cases— the Trust was a QST and thus its asset was exempt from execution as tenancy by entirety property.

Legal precedent exists to apply the Rooker-Feldman doctrine specifically to prevent a bankruptcy court from ruling on a debtor's lien avoidance motion. *See In re Lepar*, 272 B.R. 758 (Bankr. M.D. Fla. 2001) (where a state court dissolution judgment stipulated that debtor-wife was prohibited from claiming her former marital residence as protected by the homestead exemption in the collection of a judgment by her former husband, the Rooker-Feldman doctrine would divest the bankruptcy court of jurisdiction when ruling on a §522(f) motion to consider the

validity of the homestead exemption ban by the state court); *In re Zambre*, 306 B.R. 428, 432–33 (Bankr. D. Mass. 2004) (where the state court determined that debtors' declaration of homestead was fraudulent, the Rooker-Feldman doctrine was properly invoked by the bankruptcy court when denying debtors' motion to avoid the creditor's judicial lien as "[t]here is no question that the avoidance motion is an attempt to have the state court decision 'overturned' by this Court." Because the state court had previously determined that a valid homestead exemption did not exist under state law, the bankruptcy court could not look behind the state court's ruling in order to avoid the creditor's attachment under 11 U.S.C. § 522(f) as that "is precisely what is prohibited by Rooker-Feldman."); *In re Schweizer*, 2008 WL 5636386 (Bankr. M.D. Fla., Oct. 23, 2008) (where a state court designated only a portion of debtor's real properties as protected by the homestead exemption and debtor sought to redefine the homestead allocation in his bankruptcy filings in order to avoid the creditors' judicial liens upon this expanded property interest, the bankruptcy court was prohibited pursuant to the Rooker-Feldman doctrine from acting in an appellate manner to reallocate his homestead interest.)

Debtor argues that he did not challenge the validity of the State Court's Order but sought only a determination that the Mattis Road Property was exempt and the judicial liens impaired that exemption. [Appellant's Brief at p. 30.] But that is simply not true. A determination that the Trust is a QST and therefore exempt under

Missouri law, a finding that was rejected by the State Court, is an essential element of Debtor's avoidance motion. Had the State Court determined that the Trust was a QST and property held therein immune from execution under Missouri law, or had the State Court been reversed as a result of Debtor's appellate efforts, JBPI's execution would have been quashed and bankruptcy relief unnecessary.

Debtor's argument contemplates precisely the type of claim considered and rejected in the recent case of *In re Speyside Holdings LLC*, 2026 WL 1436894 (Bankr. E.D. N.Y., May 21, 2026). There, the state court in a foreclosure proceeding upheld the validity of the assignment of a loan and determined that the assignee of the original lender had standing to foreclose. When the same assignee moved for the appointment of a trustee in debtor's chapter 11 proceedings, the debtors challenged its standing, arguing that the assignee was not a "party in interest" within the meaning of the Bankruptcy Code as the assignment was invalid, and thus the movant had no standing to pursue its motion. Citing Rooker-Feldman, the bankruptcy court noted that the standing objection had been repeatedly raised by debtors and rejected by the state court. While it was true that the bankruptcy court had "independent authority" to determine a "party in interest" as defined by the Code, capable of bringing such a motion, the state court judgment established the assignee's standing. The bankruptcy court rejected debtors' indirect attack on this ruling, stating that "Debtors' argument that this Court retains independent authority to determine

whether [assignee] is a 'party in interest' before this Court, regardless of what the State Court decided already on this issue, does not cleanse the Debtors from the application and effect of Rooker-Feldman." *Id*. at *7.

The Eighth Circuit's decisions in *Caldwell v. DeWoskin*, 831 F.3d 1005 (8th Cir. 2016) and *Sutter & Gillham PLLC v. Henry*, 146 F.4th 699 (8th Cir. 2025) are cited by Debtor in support of his claim that the Rooker-Feldman doctrine does not apply. These cases suggest that the doctrine has been too broadly applied in recent years, proposing that its application is appropriate only where direct relief is sought from an erroneous state court judgment. Even if this conclusion is taken as true, both cases are distinguishable on the facts.

In *Caldwell*, a state court entered a contempt order in post-dissolution proceedings and found that the automatic stay in bankruptcy did not apply to protect the debtor from state court sanctions. The state contempt judgment was later reversed on appeal. The Eighth Circuit concluded that debtor's subsequent adversary action against his ex-wife and her attorneys in bankruptcy court for stay violation was not barred by Rooker-Feldman because their actions did not concern the entry of the contempt judgment itself, but rather the act of executing upon the state court orders. There was no challenged state court judgment before bankruptcy court— it had been set aside by that point— and thus the fourth element of a Rooker-Feldman analysis cannot be met. And unlike in the instant case, the *Caldwell* debtor alleged



Appellate Case: 26-6018 Page: 30 Date Filed: 10/16/2026 Entry ID: 5695218

that his injuries were not caused by the state court, but rather by the challenged illegal actions of these third parties in state court. *Caldwell*, 831 F.3d at 1009. Here, no such third-party wrongdoing took place; Debtor's challenge is an indirect attack on the State Court's finding that the Trust property was not tenancy by entirety property.

The court in *Sutter* declined to extend the Rooker-Feldman doctrine to federal-court claims by a plaintiff-law firm against opposing counsel and its clients arising from a state court conspiracy case. The law firm had actually withdrawn from the state court case before judgment was entered. In considering application of the doctrine, the court focused on the fact that the federal court-plaintiffs were non-parties to the underlying case, and the state court judgment had not been rendered before the federal proceedings commenced. As the decision points out, for Rooker-Feldman to apply, "a case must run the table on all" on all four of the requirements set forth in the *Exxon Mobil Corp.* decision. *Sutter*, 146 F.4th at 704. Unlike the instant case, in *Sutter* the first and fourth elements of the Rooker-Feldman test were clearly absent.

Debtor's claim before the Bankruptcy Court is inextricably intertwined with an adverse holding of the Missouri state courts. Because the lien avoidance motion seeks to adjudicate Debtor's alleged tenancy by entirety exemption in the Mattis

Road Property, a determination rejected by the State Court, Rooker-Feldman was properly invoked by the Bankruptcy Court to deny jurisdiction over the motion.

## CONCLUSION

For all of the reasons set forth herein, Appellee JD's Properties and Investments, LLC respectfully requests this Court enter its order in favor of said Appellee, affirming the Order of the United States Bankruptcy Court for the Eastern District of Missouri denying the lien avoidance motion filed by Robert Keith Monroe in his chapter 13 bankruptcy case, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Robert E. Eggmann*

Robert E. Eggmann (MO Bar #37374)
Becky R. Eggmann (MO Bar #37302)
CARMODY MACDONALD P.C.
120 S. Central Ave., Suite 1800
St. Louis, Missouri 63105
(314) 854-8600
Fax No. (314) 854-8660
ree@carmodymacdonald.com
bre@carmodymacdonald.com

ATTORNEYS FOR APPELLEE JB'S PROPERTIES AND INVESTMENTS, LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Appellee JB's Properties and Investments, LLC, certifies that this Appellee's Principal Brief complies with the type-volume limit of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Bankruptcy Procedure 8015(g), this document contains 6,976 words.

The undersigned, counsel of record for Appellee JB's Properties and Investments, LLC, certifies that this Appellee's Principal Brief complies with the typeface and type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and (6) because this document has been prepared in a proportionally spaced typeface with 14 pt. Times New Roman, using Microsoft Word for Microsoft 365, Version 23607.

*_/s/ Robert E. Eggmann_*



Appellate Case: 26-6018 Page: 33 Date Filed: 10/16/2026 Entry ID: 5695218

## CERTIFICATION OF INTERESTED PARTIES

Pursuant to L.R. BAP 8th Cir. 8014A(b)(1), the undersigned, counsel of record for Appellee JB's Properties and Investments, LLC, certifies that the following listed have an interest in the outcome of this appeal. These representations are made to enable the judges of the panel to evaluate possible disqualification or recusal:

- Robert Keith Monroe, Appellant and Debtor in Bankruptcy Case No. 24-42413-659 before the United States Bankruptcy Court, Eastern District of Missouri
- JB's Properties and Investments, LLC, Appellee and Creditor
- Jeffrey Nichols, Appellee and Creditor
- Emily Nichols, Appellee and Creditor

*/s/ Robert E. Eggmann*

## CERTIFICATION OF RELATED CASES

Pursuant to L.R. BAP 8th Cir. 8014A(b)(2), the undersigned, counsel of record for Appellee JB's Properties and Investments, LLC, certifies that the following contains a list of all known related cases before a United States Court of Appeals, a United States District Court, a United States Bankruptcy Court, or a United States Bankruptcy Appellate Panel involving substantially the same litigants, or substantially the same factual pattern or legal issue:

- substantially the same parties: none.
- substantially the same issues: none.

/s/ *Robert E. Eggmann*